Jin CHA, M.D., Appellant (Defendant Below),

v.

Judith WARNICK and Charles Warnick, Appellees (Plaintiffs Below).

No. 3-1082A276.

Court of Appeals of Indiana, Third District.

Nov. 16, 1983.

Rehearing Denied Jan. 10, 1984.

Joseph Stalmack, Jr., Galvin, Stalmack & Kirschner, Hammond, for appellant.

Lester F. Murphy, Murphy, McAtee & Costanza, East Chicago, for appellees.

HOFFMAN, Presiding Judge.

Judith and Charles Warnick instituted this action on March 26, 1982, with the filing of their complaint against Dr. Jin Cha alleging medical malpractice in the care and treatment of Judith. The Warnicks filed their malpractice claim with the Indiana Department of Insurance on April 5, 1982. A default judgment in the amount of $60,-000 was entered against Cha on May 10, 1982. On June 11, 1982, Cha filed a motion pursuant to Ind.Rules of Procedure, Trial Rule 60(B) to set aside the default judgment, which was denied on June 29, 1982. Cha filed a motion to correct errors and a motion to reconsider. On August 17, 1982, the trial court overruled its prior order and granted the motion to set aside the default judgment. Then the Warnicks filed a motion to reconsider, which the trial court granted, and the default judgment was reinstated.

In appealing the default judgment against him, Cha contends the trial court was without subject-matter jurisdiction, since pursuant to the Medical Malpractice Act, IND.CODE § 16–9.5–9–1 *et seq.,* an opinion from the medical review panel is a prerequisite to any action against a health care provider and no such opinion had been rendered before the filing of this action. The Warnicks counter with the argument that they did file a complaint with the Indiana Department of Insurance; however, as of August 20, 1982, Cha had not filed an appearance with that body. They argue that Cha failed to qualify as a health care provider under the Medical Malpractice Act and therefore is not covered by the provisions of the Act.

IND.CODE § 16–9.5–1–1 defines a health care provider in part as:

"(1) a person, partnership, corporation, professional corporation, facility or institution licensed or legally authorized by this state to provide health care or professional services as a physician, psychiatric hospital, hospital, dentist, registered or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist or psychologist or an officer, employee or agent thereof acting in the course and scope of his employment[.]"

To be qualified under the provisions of the Act, a health care provider shall:

"(1) cause to be filed with the commissioner proof of financial responsibility as provided by section 6 of this chapter; and (2) pay the surcharge assessed by this article on all health care providers according to chapter 4 of this article." [1]

IND.CODE § 16–9.5–1–5 provides:

"Sec. 5. A health care provider who fails to qualify under this article is not covered by the provisions of this article and is subject to liability under the law without regard to the provisions of this article. If a health care provider does not so quality [sic], the patient's remedy will not be affected by the terms and provisions of this article."

The Warnicks submitted as evidence a letter from an attorney representing an insurance company stating that Cha's policy with that company had been cancelled as of March 1, 1980. This is not conclusive, but what is more important, this information did not surface until after the Warnicks' action had been filed in the Lake Circuit Court. When they filed their lawsuit, they had no inkling that Cha might not qualify under the Act.

The Medical Malpractice Act specifically states:

"Sec. 2. No action against a health care provider may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel established pursu-

1. IND.CODE 16–9.5–2–1(a).

ant to this chapter and an opinion is rendered by the panel."[2]

It also provides for limited jurisdiction by a trial court in certain circumstances.

"Sec. 1.  A court having jurisdiction over the subject matter and the parties to a proposed complaint filed with the commissioner under this article may, upon the filing of a copy of the proposed complaint and a written motion under this chapter, (1) preliminarily determine any affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure; or (2) compel discovery in accordance with the Indiana Rules of Procedure; or (3) both.  The court has no jurisdiction to rule preliminarily upon any affirmative defense or issue of law or fact reserved for written opinion by the medical review panel under IC 16–9.5–9–7(a), (b) and (d).  The court has jurisdiction to entertain a motion filed under this chapter only during that period of time after a proposed complaint is filed with the commissioner under this article but before the medical review panel renders its written opinion under IC 16–9.5–9–7. The failure of any party to move for a preliminary determination or to compel discovery under this chapter before the medical review panel renders its written opinion under IC 16–9.5–9–7 shall not constitute the waiver of any affirmative defense or issue of law or fact.

"Sec. 2.  Any party to a proceeding commenced under this article, the commissioner or the chairman of any medical review panel, if any, may invoke the jurisdiction of the court by paying the statutory filing fee to the clerk and filing a copy of the proposed complaint and motion with the clerk.  The filing of a copy of the proposed complaint and motion with the clerk shall confer jurisdiction upon the court over the subject matter and the parties to the proceeding for the limited purposes stated in this chapter, including the taxation and assessment of costs or the allowance of expenses, in-cluding reasonable attorney fees, or both. The moving party or his attorney shall cause as many summonses as are necessary to be issued by the clerk and served on the commissioner, each nonmoving party to the proceedings and the chairman of the medical review panel, if any, unless the commissioner or the chairman is the moving party, together with a copy of the proposed complaint and a copy of the motion pursuant to Rules 4 and 4.17 of the Indiana Rules of Trial Procedure, IC 34–5–1–1."[3]

However, the trial court in this instance did not merely obtain jurisdiction for these limited purposes pending the decision of the review panel.  It instead entered a default judgment.

A situation similar to the one now before this Court was presented to Judge Moody of the United States District Court, Northern District of Indiana.  In *Johnson v. Methodist Hosp. of Gary, Ind.,* (N.D.Ind. 1982) 547 F.Supp. 780, the claimant had filed her complaint with the court prior to filing her proposed complaint with the Commissioner of Insurance, then argued she had satisfied the statute by filing the proposed complaint subsequently.  Judge Moody found that the proper disposition of the matter was to dismiss the complaint without prejudice.  Such action by trial courts has also been condoned by the Supreme Court of Indiana.  *Johnson v. St. Vincent Hospital, Inc.,* (1980) Ind., 404 N.E.2d 585.

Therefore, we believe dismissal of the complaint without prejudice was the proper remedy in the instant action also.  Entry of a default judgment was premature and erroneous.  At the point in time which the default judgment was entered against Cha, the trial court did not have jurisdiction to do so.

The Warnicks argue that the Medical Malpractice Act is unconstitutional because of the delay it causes the litigants. Our Supreme Court has spoken to this issue also:

---

**2.**  IND.CODE 16–9.5–9–2.

**3.**  IND.CODE 16–9.5–10–1—2.

"Delay in the commencement of a trial and the expense of investigating and marshalling evidence are part and parcel of the preparation of any piece of civil litigation. Delay routinely occurs between the decision to prosecute a claim and the trial. Expenses for investigation and preparation attend the pre-trial preparation of all claims. The panel submission requirement generates evidence admissible at a future trial of the claim. The delay in the trial occasioned by this process and the cost attendant to it are in major part like those to be expected in any case. The participation by the parties in the panel processes will satisfy to a great extent their preparation needs. Such satisfaction will tend to reduce total aggregate time for trial preparation. Thus, the delay complained of will be offset to an appreciable extent. The cost to the party in whose favor the opinion is rendered would be in the range that such party would expect to pay to develop such evidence individually. And the cost to the party against whom the opinion is rendered has been subjected to a cost by the process which would be much the same as he expects to pay to discover his opponent's evidence."

*Johnson, supra,* 404 N.E.2d at 592.

Furthermore, the Act contains time periods by which either party can keep the review process moving in order to lessen the delay.[4] However, there is no indication that the Warnicks availed themselves of these provisions.

For the reasons stated above, the judgment of the trial court is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

GARRARD and STATON, JJ., concur.

---

4. For example, IND.CODE 16–9.5–9–1, IND. CODE 16–9.5–9–3, and IND.CODE 16–9.5–9–3.-5.