**ST. ANTHONY MEDICAL CENTER, INC., Appellant–Defendant–Cross–Appellee,**

v.

**Betty SMITH, Personally and as Administratrix of the Estate of John F. Smith, Deceased, Appellee–Plaintiff–Cross–Appellant.**

No. 37A04–9010–CV–460.[1]

Court of Appeals of Indiana, First District.

May 28, 1992.

1. This case was transferred to this office by order of the Chief Judge on March 26, 1992.

Timothy F. Kelly, Law Offices of Timothy F. Kelly and Associates, Munster, for appellant-defendant-cross-appellee.

Catherine A. Kling, Indiana Dept. of Ins., Indianapolis, for amicus curiae.

Timothy S. Schafer, Schafer and Schafer, Professional Corporation, Merrillville, for appellee-plaintiff-cross-appellant.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

St. Anthony Medical Center, Inc. ("SAMC") appeals from a judgment in favor of Betty Smith, personally and as administratrix the estate of John F. Smith, decedent ("Betty"), in a wrongful death action. Betty cross-appeals challenging both the reduction of the jury's award of damages from $937,000 to $500,000 and the constitutionality of the Indiana Medical Malpractice Act. We affirm.

## ISSUES

1. Did the trial court have subject matter jurisdiction over this claim when Betty's original complaint was filed before the medical review panel had issued its opinion?

2. Did the trial court err in admitting evidence regarding the dependency of John's adult child and giving instructions on damages the adult child incurred?

3. Did the trial court err in failing to admonish the jury regarding a statement made by plaintiff's counsel?

4. Did the trial court err in restricting defense counsel's cross-examination of a witness?

5. Is the Indiana Medical Malpractice Act constitutional and did the trial court err in reducing the jury's award of damages?

## FACTS

John Smith was scheduled to undergo prostate surgery. On July 18, 1986, John underwent a pre-admission intravenous pyelogram test[2] ("IVP") at SAMC. Prior to the IVP, John was placed on a restrictive diet and instructed to take four laxatives. John reported to the radiology department at SAMC and began the IVP at 9:45 a.m.; the IVP was completed at approximately 11:15 a.m. Upon completion of the IVP, John was discharged to the dressing room located within the radiology department. At approximately 1:15 p.m., nurses' aide Patricia Howe knocked on the door and asked John if he was all right, Howe believed that John had said "yep." Record at 482. Thereafter, John remained in the dressing room until 3:45 p.m. when a nurses' aide discovered him lying on the floor. John had suffered an ischemic infarct[3],

---

**2.** An IVP is a procedure where dye is injected into the patient's veins and then a series of x-rays of the patient's kidneys are taken.

**3.** There are two different types of strokes. A hemorrhaging stroke occurs when there is bleeding in the brain, the blood takes up room, destroys part of the brain, and causes brain damage. There is also an ischemic infarct which occurs when the blood supply to the

brain is cut off. Dr. Ziegler, a member of the Quality Assurance Committee at SAMC, stated that John's stroke may have occurred because John's blood pressure dropped to a point where in one part of his brain the pressure was so low that there was not enough pressure to keep an artery open, the artery sealed off and a stroke occurred. Record at 607–608.

commonly known as a stroke, due to a lack of blood supply to his brain.

The X-ray technician at SAMC was aware that John was on a restricted diet, had taken laxatives prior to the IVP test, and that this, combined with the stress of the test itself, can lower an individual's blood pressure causing a hypotensive condition. If a person is left in a hypotensive condition for a prolonged period of time, a stroke, caused by a lack of blood supply to the brain, can result. Moreover, the dye injected into a person's veins during the administration of an IVP, can also lower blood pressure by dilating veins and arteries in the body.

John was hospitalized at SAMC after his July 18 stroke. On July 27, 1986, a nurse at SAMC administered to John three times the dosage of Heparin that he was prescribed. On August 12, 1986, while still a patient at SAMC, John died.

Betty initiated this case by filing a complaint entitled "MALPRACTICE CLAIM PROPOSED COMPLAINT" against SAMC in the Lake Circuit Court on July 8, 1987. One day later, Betty filed an identical complaint with the Indiana Insurance Commissioner ("Review Panel"). The Review Panel issued its opinion on February 23, 1989, concluding that SAMC "failed to comply with the appropriate standard of care as charged in the Complaint. However the [Review] Panel was unable to determine whether the defendant's [SAMC's] failure to comply with the appropriate standard of care was a factor of the resultant damages." Record at 33. On March 8, 1989, Betty filed a motion to reinstate her complaint with the trial court. Thereafter, SAMC filed a motion to dismiss the complaint or in the alternative for a change of venue. The court denied the dismissal. On September 11, 1989, this case was assigned to the Jasper Circuit Court.

Trial commenced on August 6, 1990. On August 8, 1990, the jury returned a general verdict in favor of Betty "... as Administratrix of the Estate of John F. Smith, deceased," and awarded damages in the amount of $937,000. Subsequently, SAMC filed its motion to reduce the judgment to the cap provided under the Indiana Medical Malpractice Act. On October 9, 1990, the court granted SAMC's motion to reduce the judgment to $500,000.

SAMC appeals the judgment and Betty cross-appeals the reduction of the damages award. Other relevant facts will be presented in our discussion.

## DISCUSSION AND DECISION

*Issue One*

SAMC asserts that the trial court lacked subject matter jurisdiction because Betty's complaint did not comply with the procedural requirements of the Indiana Medical Malpractice Act ("Act"), in that the complaint was filed before the Review Panel had issued its opinion. Thus, SAMC contends the trial court was required to grant its motion to dismiss the complaint.

The Act provides:

"Except as provided in subsection (b) and in section 3.5 of this chapter, no action against a health care provider may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this chapter and an opinion is rendered by the panel."

IND.CODE § 16–9.5–9–2. Thus, if the defendant is a qualified health care provider under the Act, a proposed complaint submitted to the medical review panel and a decision by the medical review panel upon the complaint is required prior to instituting an action in an Indiana state court of general jurisdiction. *State Ex Rel. Hiland v. Fountain Circuit Court* (1987), Ind., 516 N.E.2d 50, 51. Submission of a proposed complaint to the medical review panel is a condition precedent to filing a medical malpractice claim in Indiana. *Knoblett v. Kinman* (S.D.Ind.1985), 623 F.Supp. 805, 807. The Act grants subject matter jurisdiction of medical malpractice actions first to the medical review panel, and then to the trial court. *Cha v. Warnick* (1983), Ind. App., 455 N.E.2d 1165, 1166–67, *trans denied.* The Act does, however, provide for limited subject matter jurisdiction by a

court of general jurisdiction, prior to the time the review panel renders an opinion, in certain circumstances. *See* IND.CODE § 16–9.5–10–1 (before opinion is rendered, court has limited jurisdiction to determine preliminarily an affirmative defense, or issue of law or fact not reserved by Act for written opinion by medical review panel); *Id.* (limited jurisdiction to compel discovery); IND.CODE § 16–9.5–10–2 (party or chairman of medical review panel may invoke jurisdiction of court by paying filing fee and filing copy of proposed complaint for limited purpose "... including the taxation and assessment of costs or the allowance of expenses, including reasonable attorney fees, or both"); *Hiland,* 516 N.E.2d at 52 (in multiple defendant action, where one of the defendants is qualified health care provider, change of venue from county or judge is among issues that may be determined preliminarily); *see also* I.C. § 16–9.5–9–2(b) (may commence an action in court without first submitting claim to medical review panel if all parties agree).

■ The proper course of action when a plaintiff fails to comply with the Act is for the trial court to dismiss the complaint without prejudice, thereby allowing the plaintiff to refile after the medical review panel has issued its opinion. *Castelli v. Steele* (S.D.Ind.1988), 700 F.Supp. 449, 455; *Johnson v. Methodist Hospital of Gary, Ind.* (N.D.Ind.1982), 547 F.Supp. 780, 781–82; *Cha,* 455 N.E.2d at 1167. In the case at bar, Betty filed her medical malpractice complaint against SAMC in the trial court on July 8, 1987. One day later she filed an identical complaint with the Indiana Insurance Commissioner and the complaint was submitted to the Review Panel for it to render an opinion. Since the original complaint was filed before a proposed complaint was filed with the Review Panel and before it rendered an opinion, the trial court originally lacked subject matter jurisdiction over these proceedings. *See Castelli,* 700 F.Supp. at 455 (subject matter jurisdiction is determined as of the date a complaint is filed). Therefore, had SAMC filed an Ind.Trial Rule 12(b)(1) motion when the trial court lacked subject matter jurisdiction over the complaint, the court would

have been required to dismiss the cause of action without prejudice. This would have permitted Betty to refile her medical malpractice complaint after the Review Panel rendered its opinion. However, prior to the time that the Review Panel entered its opinion, the record reflects that the only action instituted by either party was on July 22, 1987, when SAMC's counsel entered an appearance and moved for additional time to respond.

■ It was not until August 29, 1989, that SAMC filed a motion to dismiss Betty's complaint for lack of subject matter jurisdiction. By this point in time, the Review Panel had rendered its opinion. More importantly, on March 8, 1989, after the proposed complaint had been filed with the Indiana Insurance Commission and the Review Panel had rendered its opinion, Betty filed a "MOTION TO REINSTATE" the original complaint with the trial court. SAMC concedes that once the opinion of the Review Panel was issued, the trial court would have had subject matter jurisdiction to accept the filing of Betty's complaint. Appellant's Brief at 12. However, SAMC argues that Betty's motion to reinstate was ineffective because the first complaint was a nullity; therefore, there was no complaint to "reinstate". SAMC views the motion to reinstate too narrowly. Under the peculiar facts and circumstances of this case, the motion to reinstate constitutes a refiling of the complaint; to hold otherwise would constitute a gross injustice. The important question is not the label given to an action but rather its substance. *See English Coal Co. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302, 308, *trans. denied* (character of an action is determined by its form and not its caption or formal denomination). Here, both the Review Panel and the jury found evidence of a breach of the appropriate standard of care. In addition, SAMC waited until the statute of limitations had passed before moving for dismissal. Thus, to reach any other conclusion would leave Betty without a remedy, although she has diligently been pursuing her claim against SAMC since 1987. Betty has ultimately complied with

the procedural requirements of the Act. The trial court did not err in failing to grant SAMC's motion to dismiss.

*Issue Two*

■ Next, SAMC contends that the trial court erred in denying its motion *in limine* and failing to exclude the testimony regarding the dependency of John's adult daughter, Karen Smith. More specifically, SAMC argues that although the original complaint alleged Karen's dependency, the pretrial order made no mention of such dependency; therefore, pursuant to Ind.Trial Rule 16(J), any damages which Karen suffered as a result of John's death were not a proper issue for trial. SAMC has waived this issue by failing to object at trial.

■ A trial court's ruling on a motion *in limine* is not a final ruling on the admissibility of evidence, *Farm Bureau Insurance Co. v. Crabtree* (1984), Ind.App., 467 N.E.2d 1220, 1223, *trans. denied,* and does not create an issue for appeal. *Reese v. State* (1983), Ind., 452 N.E.2d 936, 941. To preserve a challenge to the ruling, an objection must be made at the time the evidence is offered at trial. *Id.* Although SAMC in its motion *in limine* argued that Karen's dependency was not specifically set forth in the pre-trial order, and thus, the issue was not proper for trial, SAMC failed to make a similar objection at trial and cannot now rely on these grounds. *See Tabor v. State* (1984), Ind., 461 N.E.2d 118, 121 (timely and proper objection on specific grounds must be made at trial even though appellant made and argued a pre-trial motion upon the same issue); *see also Babson Brothers Co. v. Tipstar Corp.* (1983) Ind. App., 446 N.E.2d 11, 17, *trans. denied* (appellants may not vary basis of their objections at the appellate level from that asserted at trial). Thus, the issue is waived.

■ Moreover, general objections such as "irrelevant," without more, fail to preserve an issue for appellate review. *English Coal Co.,* 422 N.E.2d at 309–10; *Thomas v. State* (1982), Ind., 436 N.E.2d 1109, 1112. At trial, SAMC objected to the relevancy of Dr. Steele's testimony regarding Karen's dependency. These objections were not specific and did not preserve any error for our review. *See id.* The only objection made by SAMC to Betty's testimony regarding Karen, was that events occurring in Karen's childhood were too remote. This objection was sustained by the trial court. Thus, other evidence as to Karen's dependency, including her physical defects, learning difficulties, inability to obtain a job due to her reading and speech impairments, and the fact that she lived with her parents, were admitted without objection. Record at 667–670. Evidence that is admitted without a timely objection is entitled to full weight and consideration and may be used to support the judgment. *Dayton Walther Corp. v. Caldwell* (1980), 273 Ind. 191, 200–201, 402 N.E.2d 1252, 1257.

■ SAMC also contends that there was insufficient evidence concerning the existence of Karen's dependency to support jury instructions number 36 and 37 regarding recovery for Karen's loss of support. We disagree. The giving of a jury instruction is within the sound discretion of the trial court. *Weller v. Mack Trucks, Inc.* (1991), Ind.App., 570 N.E.2d 1341, 1343. If any evidence supports the instruction, we will uphold the trial court's giving of the instruction. *Id.* Here, Dr. Steele testified that Karen suffered from various birth defects and had difficulty speaking. Record at 537–38. Further, he testified that he believed Karen always lived at home and was unable to hold down a job. Record at 538. Betty also testified that Karen was born with defects, had always lived at home, and was unemployable. Record at 666–70. The trial court did not err because the evidence supports the giving of the instructions.

*Issue Three*

■ SAMC also argues that the trial court erred in failing to admonish the jury regarding an incorrect statement made by Betty's counsel. We believe that any prejudice that may have occurred from the incorrect statement was properly remedied by the court.

On recross-examination, counsel for SAMC questioned Betty about a malpractice complaint filed before the Insurance Commissioner against Dr. Kinasiewicz. During the questioning, Betty's counsel, Timothy Schafer, stated "I believe that's been dismissed, Your Honor." Counsel for SAMC replied that the complaint had not been dismissed. Thereafter, Schafer, on behalf of the plaintiff rested and defendant proceeded with its case-in-chief. The following day, SAMC asked the court to correct the misstatements made by Schafer. SAMC requested either a stipulation be read to the jury that a complaint against Dr. Kinasiewicz was pending or Schafer be called as a witness. The court suggested that the complaint be offered into evidence. Although the precise course of action was not agreed upon, the court stated that it would inform the jury that the complaint was still pending. Subsequently, upon Kelly's request, the complaint was admitted into evidence. Since the complaint was introduced into evidence, the court refused to inform the jury specifically that the complaint was still pending.

SAMC has not shown that it has been prejudiced by any misstatement made by Schafer. The complaint against Dr. Kinasiewicz was admitted into evidence as originally suggested by the trial court. At the conclusion of the evidence, the jury was allowed to review the exhibits admitted into evidence including the pending complaint. Further, in the final instructions, the jury was instructed that any statements made by the attorneys were not evidence in the case. Record at 993. The trial court remedied any error that may have occurred. In addition, as SAMC itself pointed out to the trial court, it had the option of commenting that the complaint was pending in its final arguments. Record at 933.

*Issue Four*

Next, SAMC contends that the trial court erred when it restricted its cross-examination of an expert witness, Dr. Ziegler. We disagree.

Cross-examination of a witness is the appropriate means to "elucidate, modify, explain, contradict, or rebut" direct testimony. *Davis v. Eagle Products, Inc.* (1986), Ind.App. 501 N.E.2d 1099, 1107, *trans. denied.* However, there is no right to unbridled cross-examination. *Id.* Since the trial judge is in the best position to observe the proceedings, he has the duty to manage the trial and control the extent of cross-examination. *Id.* The trial judge has wide latitude in ruling on the extent of cross-examination and only a clear abuse of discretion warrants a reversal. *City of Indianapolis v. Swanson* (1983), Ind., 448 N.E.2d 668, 671; *Terre Haute First National Bank v. Stewart* (1983), Ind.App., 455 N.E.2d 362, 368. To establish an abuse of discretion, the trial court's ruling must be clearly against the logic and effects of the facts and circumstances, as well as the reasonable inferences drawn therefrom. *Davis,* 501 N.E.2d at 1107. Moreover, absent a showing of prejudice, we will not reverse the trial court's ruling. *Id.* at 1107–1108.

The trial court did not abuse its discretion in limiting SAMC's cross-examination of Dr. Ziegler. Both parties subpoenaed Dr. Ziegler, a member of the Review Panel, to testify. Record at 614–615. During plaintiff's case-in-chief, SAMC had the opportunity to cross-examine Dr. Ziegler extensively. In fact, the record reveals that the court afforded wide latitude in the scope of SAMC's cross-examination in an effort to avoid the necessity of the defense recalling Dr. Ziegler. However, as the trial court correctly observed, SAMC was attempting to put on its case during the plaintiff's case-in-chief; thus, it was clearly within the trial court's discretion to curtail SAMC's cross-examination of Dr. Ziegler as being outside the scope of direct examination. Moreover, SAMC failed to show any prejudice. SAMC was given the option of recalling Dr. Ziegler, which it chose not to do.

*Issue Five*

In her cross-appeal, Betty challenges the constitutionality of the Act and specifically, the $500,000 limitation on recoveries created under IND.CODE § 16–9.5–2–2. She contends that the Act violates the due process clause of the United

States and the State of Indiana's Constitution; violates the right to a jury trial; is an irrebuttable presumption; violates the Equal Protection and special legislation clauses; and, denies the right of access to the courts and the constitutional rights to a full and complete remedy. Our supreme court has previously addressed these issues in *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585, and we are bound by its finding that the Act is constitutional. *See Hines v. Elkhart General Hospital* (N.D.Ind.1979), 465 F.Supp. 421, 430–34, *aff'd*, 603 F.2d 646 (Act does not violate litigant's right of access to courts, right to a jury trial, equal protection clause, or due process clause); *see also Cha v. Warnick*, 476 N.E.2d 109, 111–114 (reaffirms decision in *Johnson* and concludes extent of delays in obtaining review panel's opinion in proceedings under the Act were insufficient to find the Act unconstitutional). Betty questions the validity of *Johnson* and urges us to follow other jurisdictions which have held their Medical Malpractice Acts invalid; however, such is not our function as an intermediate appellate tribunal.

Betty also argues that the trial court erred as a matter of law when it reduced the jury verdict of $937,000 to the $500,000 cap as provided under the Act. Betty asserts that two separate and distinct occurrences of malpractice were established; and therefore, the verdict was within the limit of the Act.

In interpreting statutes, it is this court's primary objective to ascertain and give effect to the intent of the legislature. *Highland Realty, Inc. v. Indianapolis Airport Authority* (1979), 182 Ind.App. 439, 448, 395 N.E.2d 1259, 1266. Where the intent is clearly expressed by the language of the legislation, we may not construe the statute to mean something other than what it plainly states on its face. I.C. § 16–9.5–2–2 specifically provides:

"(a) The total amount recoverable for any injury or death of a patient may not exceed five hundred thousand dollars ($500,000) except, that as to an act of malpractice that occurs on or after January 1, 1990, the total amount recovered for any injury or death may not exceed seven hundred fifty thousand dollars ($750,000).

(b) A health care provider qualified under this article is not liable for an amount in excess of one hundred thousand dollars ($100,000) for an occurrence of malpractice."

Even if we were to assume arguendo that the jury found two separate acts of medical malpractice, the Act's limitations still allow Betty to recover only $500,000, and only $100,000 against SAMC, specifically. The Act allows a recovery of $500,000 for "any injury or death." I.C. § 16–9.5–2–2(a). As pointed out by SAMC, John suffered a single injury, a stroke, which led to his death. Betty's claim, filed against SAMC, is derived from that death. Although the claim is based upon medical malpractice, it is ultimately a claim for wrongful death. Therefore, Betty is limited to recover only once for the death of her husband and not as she argues for two acts of medical malpractice.

In addition, Betty contends that SAMC is liable for $200,000, rather than $100,000. We disagree. I.C. § 16–9.5–2–2(b)'s limitation on an individual health care provider's liability to $100,000 "for an occurrence of malpractice" should be read in conjunction with subsection (a)'s limitation on the total amount recoverable "for any injury or death." *See Keskin v. Munster Medical Research Foundation* (1991), Ind. App., 580 N.E.2d 354, 358. (Where several sections of a statute refer to the same subject matter, they are to be interpreted in *pari materia* and construed together). Interpreting "occurrence" to be a less comprehensive term than "injury or death" would be inconsistent with the intent of the Act. Moreover, Betty's claim that SAMC has waived the statutory cap on damages by filing a motion *in limine* restricting reference to the $500,000 is meritless.

Affirmed.

CONOVER and CHEZEM, JJ., concur.