Alejandro C. CEBEDO, MD, Appellant,

v.

Rosalind TOBAL, Individually and as personal representative of the Estate of Carol Sampson, Deceased. Appellee.

No. 1999/115.

District Court, Virgin Islands,
Appellate Division,
D. St. Croix.

Filed: Jan. 14, 2003.

R. Eric Moore, Law Offices of R. Eric Moore, Christiansted, VI, for Appellant.

Diane Trace Warlick, RN, JD, Hart, Buckley & Wallace, P.C., Dallas, TX, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and AUDREY L. THOMAS, Judge of the Territorial Court, Division of St. THOMAS and St. JOHN, Sitting by Designation.

## OPINION OF THE COURT

PER CURIAM.

This appeal arose from the trial court's award of non-economic damages that applied the statutory cap individually to the survivors of the decedent, Carol Sampson.[1] Following the award of damages by the Territorial Court in favor of the Plaintiff, Rosalind Tobal, the Defendant Alejandro C. Cebedo, M.D. presents the following issue for appellate review:

> Whether the trial court erred in its application of the statutory cap of $75,000.00 individually to each survivor or beneficiary of the deceased patient for non-economic damages established under the Virgin Islands Health Care Provider Malpractice Act and the Virgin Islands Wrongful Death Act?

For the reasons stated below, this Court will affirm the trial court's decision to apply the damage award individually rather than collectively in favor of Rosalind Tobal.

## I. FACTS AND PROCEDURAL HISTORY

Rosalind Tobal ("Tobal" or "Appellee") filed this action for wrongful death as a

---

1. The Plaintiff, Rosalind Tobal, sought damages for medical malpractice, wrongful death, abandonment, loss of parental guidance and support, emotional distress, and lack of informed consent.

result of medical malpractice on behalf of the estate of her deceased daughter, Carol Sampson ("Sampson" or "decedent"), born June 14, 1965, and her four minor children that survived her. Tobal alleges that her daughter's death was caused by the negligence of Dr. Alejandro C. Cebedo ("Cebedo" or "Appellant") as well as other unnamed individuals on staff at the Juan F. Luis Hospital and Medical Center ("JFL Hospital").

On June 17, 1995, shortly before midnight, the decedent was admitted to the JFL Hospital for multiple stab wounds to the abdomen and left forearm inflicted by her husband.[2] (Appendix at 64.) Cebedo was the Doctor on call for surgical emergencies, at the time the decedent was admitted. After examining the decedent and concluding that the knife wounds to her abdomen and left forearm were not life threatening, Cebedo sutured the decedent's injuries. (Appendix at 64.)

The decedent was subsequently admitted to the surgical floor on June 18, 1995, at 2:40 a.m. She continued to complain of abdominal pains and her inability to sleep and was given additional medication. Several hours later, at approximately 10:00 a.m., Cebedo did an examination of the decedent. Cebedo did not visit with the decedent again that day; however, he was given updates from the hospital staff throughout the day regarding the lack of improvement of her condition. The JFL Hospital records indicated that the decedent had a large fluid intake, but an unusually low urine output with continual abdominal pains.

On June 19, 1995, on or about 5:00 a.m. Cebedo was informed that the decedent was "cold and clammy" with a temperature of 91.4 and that the nurse's aide was unable to find decedent's pulse or get her blood pressure. (*Id.* at 67.) Cebedo visited the decedent at approximately 5:30 a.m. because her vital signs were reportedly faint and weak. (*Id.*) Based on Cebedo's examination of the decedent, he then issued "[p]re-operative orders... for an exploratory laparotomy." [3] (*Id.*) The hospital records indicate that by 7:30 a.m. the decedent was less responsive and her breathing became more labored. (*Id.*) Hospital staff responded to a Code Blue [4] emergency call for the decedent at 8:10 a.m. The vital signs of the decedent were poor, as her "pupils were dilated and non-reactive to light[;] there was no discernible pulse and no independent respirations." (*Id.*) The decedent was pronounced dead at 8:40 a.m., by the Emergency Room physician on call at the JFL Hospital. (*Id.* at 7.)

Tobal filed this action on June 18, 1997 with the Territorial Court of the Virgin Islands, as the personal representative of the Estate of Carol Sampson, on behalf of the decedent's survivors and beneficiaries, pursuant to 5 V.I.C § 76. The essence of Tobal's complaint is based on the wrongful death of her daughter caused by the alleged negligence and/or malpractice of Cebedo. Cebedo denied Tobal's allegations and, on December 29, 1998, filed a motion to strike plaintiff's claims for non-economic damages in excess of $75,000.00 pursuant to 27 V.I.C. § 166b(c). Tobal submitted an

2. A Territorial Court jury convicted Henry Curtis Sampson, the decedent's husband, of murder.

3. Laparotomy is a surgical incision through the flank; less correctly, but more generally, abdominal section at any point. The Sloane–Dorland Annotated Medical–Legal Dictionary 404 (1987). This procedure allows a physi-

cian to explore the abdominal region of the body where there are unexplained symptoms. Here, the vital signs of the decedent were not improving and her constant complaints of abdominal pains necessitated such a procedure.

4. Code Blue is the emergency call for doctors to respond and resuscitate a patient. *Id.* at 154.

opposition dated January 22, 1999 to Cebedo's motion to strike. On June 18, 1999, the trial court denied Cebedo's motion to strike plaintiff's claim for non-economic damages in excess of $75,000.00.[5] Territorial Court Judge Edgar D. Ross found in relevant part that:

> While this case implicated the medical malpractice statute, it is at essence a wrongful death suit. It is the decedent's death from which the plaintiff['s] action derives.... The Court's interpretation comports with the legislative intent to award to plaintiffs in a wrongful death suit based on medical malpractice recovery on an individual rather than a collective basis. While the lack of express legislative guidance as to what it intended in subjecting the wrongful death recovery to the limits in the HCPMA [Health Care Provider Malpractice Act]is dismaying, [i]t is clear that our wrongful death statute is intended to compensate victims for their individual losses resulting from wrongful death. 5 V.I.C. § 76(a).

(Appendix at 9–10.) Cebedo filed a petition for permission to appeal pursuant to Rule 6(a) of the Virgin Islands Rules of Appellate Procedure. On August 5, 1999, the District Court of the Virgin Islands issued an Order granting Cebedo permission to appeal. The instant appeal followed on October 7, 1999.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

▮ The District Court of the Virgin Islands has appellate jurisdiction to review the judgments and orders of the Territorial Court in all civil cases pursuant to 4

V.I.C. § 33 and Section 23A of the Revised Organic Act of 1954.[6] This is an interlocutory appeal for an Order of the Territorial Court; therefore, the standard of review is plenary. *Epright v. Environmental Resources Management, Inc. Health & Welfare Plan*, 81 F.3d 335, 339(3d Cir.1996). We exercise plenary review over the Territorial Court's interpretation of the legal standards and its application to the factual history of the case. *Epstein Family Partnership v. Kmart Corp.*, 13 F.3d 762, 766 (3d Cir.1994). "Moreover, the ... Court cannot, by couching a legal conclusion as a finding of fact, prevent appellate review of legal errors." *Epstein*, 13 F.3d at 766.

Here, we are reviewing the denial of defendant's motion to strike plaintiff's claim for non-economic damages in excess of $75,000 for abuse of discretion. *Max's Seafood Café v. Quinteros*, 176 F.3d 669 (3d Cir.1999). However, to the extent that the denial of reconsideration is predicated on an issue of law, such an issue is reviewed *de novo*; to the extent that the Territorial Court's disposition of the reconsideration motion is based upon a factual finding, it is reviewed for clear error. *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1203 (3d Cir.1995). This Court has the power to affirm, modify, vacate, set aside or reverse any Territorial Court judgment or order appealed from and may remand the cause and direct the entry of such appropriate judgment, decree, or order or require such further proceedings to be had, pursuant to 4 V.I.C. § 33.

### B. Applicable Statutes

The gravamen of Cebedo's appeal is the Territorial Court's statutory interpretation

---

5. This Order was amended on July 12, 1999 to reference the Memorandum Opinion dated June 18, 1999.

6. The Revised Organic Act of 1954 is found at 46 U.S.C. § 1613a (1994), *reprinted in* V.I. CODE ANN., Organic Acts, 73–177 (codified as amended) (1995 & Supp.2000) (preceding V.I. CODE ANN. TIT. 1) ["Revised Organic Act"]

of the Virgin Islands Health Care Provider Malpractice Act and the Virgin Islands Wrongful Death Act and its application of the statutory cap of $75,000.00 for non-economic damages. Moreover, the Appellant argues that the trial court's decision that the Wrongful Death Act takes precedence over the Medical Malpractice Act, which is a more limiting statute, constitutes a reversible legal error.

### 1. *Virgin Islands Health Care Provider Malpractice Act*

The Appellant argues on appeal that the Virgin Islands Health Care Provider Malpractice Act ("Medical Malpractice Act") was enacted with the legislative intent of limiting the award of damages against the Government of the Virgin Islands and health care providers in the territory. (Reply Brief of Appellant at 4–5.) The Appellant further states that the Legislature's purpose for such limitations in the Medical Malpractice Act is obvious because of the onslaught medical malpractice cases and the subsequent increase in professional liability insurance. (Brief of the Appellant at 7.) [7]

In an effort to limit the damage award in medical malpractice actions, Title 27 of the Virgin Islands Code § 166b provides in pertinent part that:

> (b) The only damages which may be awarded in an action under this subchapter are the following:
>
> (1) economic damages; and
>
> (2) noneconomic damages.
>
> (c) The total amount awarded for non-economic damages for any injury to a patient as a result of a single occurrence in an action under this subchapter may not exceed seventy-five thousand dollars ($75,000).
>
> . . . .

> (f) **The recovery in an action for wrongful death of a patient shall be as provided in Title 5, Section 76, Virgin Islands Code, and shall be subject to the same limitations on recovery as are provided for in this section. (emphasis added)**

27 V.I.C. § 166b.

The trial court's ruling was consistent with the statutory provision with respect to the maximum award available for non-economic damages under the Medical Malpractice Act. Although the Medical Malpractice Act clearly and unequivocally establishes a limitation on the recovery of a plaintiff for damages, the statute is vague as to whether the statutory cap of $75,000 for non-economic damages applies individually or in aggregate.

On the other hand, the Appellee argues that the Medical Malpractice Act must be applied in conjunction with the Virgin Islands Wrongful Death Act because the intent of the Legislature is contained therein. (Brief of the Appellee at 9.) The Appellee suggests that the language contained in the Wrongful Death Act has to "prevail over the uncodified purposes of the Malpractice Act." (*Id.* at 12.) Herein lies the crux of the differences in the interpretation of the statutory language by both parties.

In *Richardson,* this Court was faced with a similar scenario wherein the Virgin Islands Wrongful Death Act and the Medical Malpractice Act were both at issue. The issue before the Court in *Richardson* was the accrual date for a wrongful death action. *Richardson,* 744 F.2d at 1011–1012. The Court stated:

> [It] recognize[s] that the Medical Malpractice Act was enacted in large part to

---

**7.** The Appellant cites *Davis v. Omitowoju,* 883 F.2d 1155, 1159 (3d Cir.1989) where the court closely reviewed the Virgin Islands Leg-islature's session on the Medical Malpractice Act.

reduce the exposure of health care providers to malpractice liability, see Leg. Debate on Bill 6773, 11th Leg.Sess. of V.I., Oct. 28–29, 1974, and that our holding increases rather than reduces this exposure. The legislative history of the Medical malpractice Act, however, has to be set against the explicitly stated policy of the Wrongful Death Act, noted above, to shift the losses from the survivors of the decedent to the wrongdoer. 5 V.I.C. § 76(a). The Act states that its provisions 'are remedial and shall be liberally construed.'

*Richardson v. Knud Hansen Memorial Hospital,* 744 F.2d 1007, 1012(3d Cir. 1984).[8]

The Court in *Richardson* decided that the action was a wrongful death based on medical malpractice; therefore, damages were awarded by strictly construing the provisions of the Wrongful Death Act. However, the Court held that the action was not barred by the statute of limitations, because in an action for wrongful death that is based on medical malpractice, the date of accrual is the date of the patient's death and not the date of the injury. *Id.* at 1012–1013. In this case, the statute of limitation is not in issue.

### 2. *Virgin Islands Wrongful Death Act*

The Appellant argues on appeal that the trial court erred in determining that the Virgin Islands Wrongful Death Act ("Wrongful Death Act") and its contents superseded the Medical Malpractice Act, by its ruling that the statutory cap must be applied individually to each survivor of the decedent, rather than collectively.

(Brief of Appellant at 8–9; Reply Brief of Appellant at 6–7.)

In an action for wrongful death, Title 5 of the Virgin Islands Code § 76 provides that:

### Legislative Intent

(a) It is the public Policy of the Territory to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. Subsections (b) through (j) of this section are remedial and shall be liberally construed.

### Right of Action

(c) When the death of a person is caused by the wrongful act, negligence...and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person ... that would have been liable in damages if death had not ensued shall be liable for damages as specified in this section notwithstanding the death of the person injured, although death was caused under the circumstances constituting a felony.

### Parties

(d) The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this section, caused by the injury resulting in death. When a personal injury to the decedent results in his death, no action for the personal injury shall survive, and such action

---

**8.** Likewise, in another wrongful death action based on medical malpractice decided on the same day as *Richardson, Kock v. Government of the Virgin Islands,* 744 F.2d 997, 1001 (3d Cir.1984), this panel notes that the language therein: "because the wrongful death statute contains no limitation on the amount of recovery[,] ... [any] reference to that statute in section 166b of the Medical Malpractice Act cannot impose any limitation on the amount of recovery in malpractice actions" is dicta and contrary to the plain language of the statute.

pending at the time of death shall abate...

### Damages

(e) All potential beneficiaries of a recovery for wrongful death, including the decedent's estate, shall be identified in the complaint and their relationships to the decedent shall be alleged. Damages may be awarded as follows:

(1) *Each survivor may recover the value of lost support and services from the date of the decedent's injury to his death, with interest, and future loss of support and services from the date of death and reduced to present value.* In evaluating loss of support and services, the survivor's relationship to the decedent ... and the replacement value of the decedent's services to the survivor may be considered.

(2) The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury.

(3) Minor children of the decedent may also recover for lost parental companionship, instruction and guidance and for mental pain and suffering from the date of injury....

5 V.I.C. § 76 (emphasis added). The Appellant maintains that the trial court erred in determining that the two statutes "must be read in conjunction with each other." (Appendix at 4.) The Appellant argues that the Appellee is limited to the same recovery under the Wrongful Death Act as he is under the recovery provided for in the Medical Malpractice Act. (Brief of the Appellant at 4.)

Conversely, the Appellee argues that the language contained in 27 V.I.C. § 166b(f) clearly provides that recovery for wrongful death of a patient is subject to the same limitation set forth in 5 V.I.C. § 76. (Brief of the Appellee at 12.) Moreover, the Appellee states that the "malpractice action for personal injury was extinguished upon the death of" the decedent. (*Id.*) Therefore, the trial court's application of the Wrongful Death Act was correct.

This Court will follow the trial court's ruling because its emphasis on the Wrongful Death Act did not give rise to judicial error or result in the misinterpretation of the Legislative intent. Accordingly, the statutory cap on non-economic damages in a wrongful death action based on medical malpractice can be applied individually rather than in aggregate.

C. **The Trial Court Did Not Err in Awarding the Survivors the Statutory Cap of $75,000.00 Individually for the Wrongful Death of the Decedent.**

The Appellant alleges that the trial court erred in awarding the Appellee the statutory cap of $75,0000.00 in non-economic damages for each survivor of the decedent individually. The Appellant further alleges that the language and content of the Medical Malpractice Act is unambiguous and precise in its meaning. Appellant's position on appeal is that the Medical Malpractice Act unequivocally precludes the Appellee, as the personal representative for the estate of the decedent, from receiving a recovery in excess of $75,000.00 in aggregate. (Appendix at 7.) In support thereof, the Appellant argues that this Court should look to the Indiana court for its interpretation and application of the Indiana Malpractice Statute.[9]

9. The Virgin Islands Health Care Provider Act is modeled after the Indiana Malpractice Stat- ute. (Appendix at 30.)

The Appellant offers the case of *St. Anthony Medical Center, Inc. v. Smith,* 592 N.E.2d 732 (Ind.Ct.App.1992) a wrongful death action based on medical malpractice wherein the court concluded that the Plaintiff's judgment be reduced in compliance with the statutory cap. In *St. Anthony,* the court granted the Defendant's motion to reduce the $937,000.00 damage award to be consistent with the statutory limitation of $500,000.00 expressed in the Indiana Medical Malpractice Act.[10] *St. Anthony,* 592 N.E.2d at 734.

Additionally, the Indiana court stated that "[a]lthough the claim is based upon medical malpractice, it is ultimately a claim for wrongful death." *Id.* at 739. Therein, the Plaintiff brought a cause of action against the hospital alleging its failure to provide her deceased husband with the appropriate standard of care, which resulted in his untimely death. *Id.* at 735.

Here, the trial court found that the Plaintiff's cause of action arose out of the death of the patient as a result of the alleged malpractice. The cause of action was therefore grounded in the wrongful death of the decedent and required the trial court to strictly construe the Wrongful Death Act. The trial court's decision to simultaneously apply the statutes was not erroneous. Likewise, the thrust of the Appellee's position supports a finding that the statutes be used in conjunction with each other in order to achieve the Legislative intent to allow each individual survivor to recover for the decedent's wrongful death.

The Appellee also argues that the trial court's ruling is without error based on the precedence established by the holding in *Leonard v. Government of the Virgin Islands,* 17 V.I. 169 (T.C.1980). In the case of *Leonard,* Winston Leonard was shot and killed by a police officer during an attempt by the officer to arrest him. The court held that each survivor in a wrongful death action was entitled to receive the then statutory cap of $25,000.00, individually and not collectively, pursuant to the Tort Claims Act. *Leonard,* 17 V.I. at 171; *see* 33 V.I.C. §§ 3401–3416. More importantly, the *Leonard* court stated that "[t]he clear legislative intent of the Wrongful Death Act, which was to expand survivor's rights to recover damages, compels a conclusion that each award must be construed separately . . . ." *Id.* at 173.

This Court will follow the same ruling as the trial court in the *Leonard* case. The significance of the Medical Malpractice Act was to limit the damage awards given by the court in an effort to maintain the availability of medical care in the territory despite the increasing cost of medical insurance for health care providers. However, the Wrongful Death Act was enacted to ensure recovery to each survivor of the decedent in a wrongful death action.

It is very clear that the cause of action in this case stems from the wrongful death of the decedent due to the negligence/malpractice of the Appellant. Given the circumstances surrounding this action, it would be judicial error to apply the Medical Malpractice Act without the application of the Legislative intent to provide recovery for each of the survivors and beneficiaries of a decedent whose death was deemed wrongful based on medical malpractice. The trial court correctly applied

---

10. The Indiana medical Malpractice Act provides in pertinent part:

   (a) The total amount recoverable for any injury or death of a patient may not exceed five hundred thousand dollars ($500,000) . . . .

   (b) A health care provider qualified under this article is not liable for an amount in excess of one hundred thousand dollars ($100,000) for an occurrence of malpractice.

*St. Anthony,* 592 N.E.2d at 739.

both statutes. This matter is a wrongful death action based on medical malpractice and as such the Appellee must receive the safeguards of both statutes.

The Court respectfully disagrees with Appellant's argument that the award for non-economic damages must be applied collectively, as such a ruling would "obviate the legislative intent" behind the need for these statutes. (Appendix at 10.) The Virgin Islands Wrongful Death Act is very clear and unambiguous in its meaning, which is to provide **"each survivor"** with recovery for the death of the decedent. The trial court accomplished just that when it held that the Plaintiff was entitled to a recovery for each survivor of the decedent. By allowing the damage award to be applied collectively, this Court will effectuate a misapplication of the Wrongful Death Act. Furthermore, the trial court did comport with the provisions of the Medical Malpractice Act by awarding damages in the amount of $75,000.00 to each survivor of the decedent.

## III. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

### ORDER OF THE COURT

**AND NOW** this 14 day of January 2003, having considered arguments and submissions of the parties, and for the reasons set forth in the Court's accompanying opinion of even date, it is hereby

**ORDERED AND ADJUDGED** that the judgment of the trial court is **AFFIRMED.**