Jin CHA, M.D., Indiana Department of Insurance, and Donald H. Miller, As Commissioner of Insurance of the State of Indiana, Appellants (Defendants Below),

v.

Judith WARNICK and Charles Warnick, Appellees (Plaintiffs Below).

No. 384S110.

Supreme Court of Indiana.

April 3, 1985.

Rehearing Denied May 28, 1985.

Joseph Stalmack, Galvin, Stalmack & Kirschner, Hammond, for appellant Jin S. Cha, M.D.

Linley E. Pearson, Atty. Gen. of Indiana, Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellants Indiana Dept. of Insurance and Donald H. Miller.

Lester F. Murphy, Murphy, McAtee, Murphy & Costanza, East Chicago, for appellees Judith Warnick and Charles Warnick.

Geoffrey Segar, Myra C. Selby, Ice Miller Donadio & Ryan, Indianapolis, for amicus curiae Indiana State Medical Ass'n.

Frederick Wm. LaCava, Hall, Render, Killian, Heath & Lyman, Indianapolis, for amicus curiae Indiana Hosp. Ass'n, Inc.

PIVARNIK, Justice.

This cause comes directly to this Court pursuant to Ind.R.App.P. 4(A)(8) since the trial court found a state statute unconstitutional. Plaintiffs-Appellees Judith and Charles Warnick initiated this action against Defendants-Appellants Jin Cha, Indiana Department of Insurance and Indiana Commissioner of Insurance Donald H. Miller, on January 20, 1983, by filing a

complaint for declaratory judgment in the Lake Circuit Court. Their complaint alleged that the Indiana Medical Malpractice Act, Ind.Code §§ 16–9.5–1–1—16–9.5–10–5 (Burns 1983), was unconstitutional because "it usurps the judicial function, violates the right to trial by jury, violates the due process clause, violates the Fourteenth Amendment Equal Protection Clause, violates plaintiffs' right to access to the Court and is a taking of property without due process of law." Plaintiffs' action was tried before the Honorable J. Phillip McGraw, Judge of the Jasper Superior Court, on September 30, 1983. On November 2, 1983, Judge McGraw filed Findings of Fact and Conclusions of Law and entered his judgment holding the Indiana Medical Malpractice Act unconstitutional.

Plaintiffs previously had filed a medical malpractice action against Defendant Cha in the Lake Circuit Court on March 26, 1982. That action, based on the very same facts involved in the present case, eventually resulted in a default judgment against Defendant Cha which was appealed. An opinion was issued by the Third District Court of Appeals on November 16, 1983, which vacated the default judgment and remanded the case to the trial court for further proceedings. *Cha v. Warnick,* (1983) Ind.App., 455 N.E.2d 1165, *trans. denied.* Transfer to this Court was denied on March 16, 1984. When the Jasper Circuit Court entered judgment in the instant case, the previous action pertaining to the default judgment was still pending before the Court of Appeals. We note that a copy of Cha's "Amended Brief of Defendant Appellant" which he filed in the first case before the Court of Appeals was introduced into evidence before the trial court in this second case.

The trial court heard evidence submitted by Plaintiffs in this second case in the form of statistics suggesting the history of the 2,349 causes filed with the Department of Insurance under the Medical Malpractice Act up until May 13, 1983. This evidence can best be summarized by the following table:

| Department of Insurance case classification | Number filed | % of total | Average number of months pending (30 day month) |
|---|---|---|---|
| Fund payment completed | 54* | 2.32 | 27.96 |
| Panel opinion rendered | 418 | 18.33 | 23.83 |
| Closed | 146** | 5.96 | 25.09 |
| Closed—no panel decision | 526 | 20.56 | 16.83 |
| Progressing to panel | 518 | 22.71 | 22.24 |
| Pending—no panel selected | 599 | 26.26 | 14.28 |
| Problems | 88 | 3.86 | 26.24 |
| | 2349 | 100.0 | |

* includes 1 "invalid" case.

** includes 67 "invalid" cases.

---

Plaintiffs' counsel also introduced two expert witnesses who were lawyers having experience with medical malpractice cases. Attorney Richard Tebik testified that he stopped handling medical malpractice cases after the Malpractice Act became effective. He thereafter referred malpractice cases to specialists because of the considerable delays created by the Act in the process by which medical malpractice cases are resolved. Attorney Timothy Schafer testified that he had been practicing law for approximately six and one-half years and was, at that time, involved in approximately twelve medical malpractice cases of which five already had been filed. Of those five cases, he had requested a panel review in two. He filed with the Department of Insurance

for the first review in March, 1981, and the panel opinion was rendered in May, 1983. A pretrial conference was scheduled for September 21, 1983. The other case was filed in April, 1978, and thereafter became part of the consolidated case decided by this Court in *Johnson v. St. Vincent Hospital, Inc.*, (1980) 273 Ind. 374, 404 N.E.2d 585. A panel opinion eventually was rendered in December, 1981, after the *Johnson* case was decided, and trial was scheduled for a date in October, 1982. Attorney Schafer also testified that some discovery takes place while malpractice cases are pending before a review panel. He could not render an opinion, however, about the length of time it takes to obtain a trial for medical malpractice cases as compared to the length of time it takes to obtain a trial for substantial cases not involving medical malpractice claims.

Defendant Cha presented the testimony of another expert witness, Attorney David Jensen, who had handled approximately three hundred medical malpractice cases while practicing law since 1971. At the time of the trial, Attorney Jensen had one hundred malpractice defense cases pending in his office. He testified that as cases progress through the formation of a medical review panel, almost invariably there is some discovery initiated by the parties in the form of interrogatories and depositions. Jensen further stated his opinion that most discovery involving the parties actually occurs during the review panel stage while the "expert phase of the trial preparation" takes place after the medical review panel has rendered its opinion. With regard to the time it takes to proceed from initial filing to trial, Jensen testified that cases under the Malpractice Act compare very favorably with similar types of litigation not required to follow the Malpractice Act procedure. Defendant Cha also presented Jeff Anderson who offered to the trial court his comprehensive statistical analysis of how Indiana medical malpractice cases filed between 1976 and 1983 were treated. This witness' testimony was that in all of those malpractice cases resulting in a panel opinion, the panel opinion was rendered in an average of 23.4 months from the date the case was filed. His statistics also showed that at least one case filed in each of the years of 1976, 1977, 1978, 1979 and 1980 pended for as long as 83.03 months, 74.99 months, 65.75 months, 53.88 months and 41.85 months respectively.

The trial court acknowledged that this Court declared Indiana's Medical Malpractice Act constitutional in 1980 in *Johnson.* The trial court took the position, however, that this Court in *Johnson* found the Act constitutional on its face without regard to its application to particular individuals and without having had an opportunity to consider the Act's actual experience. The trial court accordingly distinguished the application of *Johnson* on that basis. Moreover, the trial court found that among the decisions which this Court relied upon in finding Indiana's Act constitutional were *Carter v. Sparkman*, (1976) Fla., 335 So.2d 802, *cert. denied*, (1977) 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753, and *Parker v. Children's Hospital of Philadelphia*, (1978) 483 Pa. 106, 394 A.2d 932, which have since been overruled based on the actual experience of the Florida and Pennsylvania Acts. The trial court concluded that both the Florida and Pennsylvania Supreme Courts found unacceptable the delays caused by the Florida and Pennsylvania Acts since those delays impinged the constitutional rights of plaintiffs seeking relief under those Acts. Defendants challenged this conclusion, however, and argued that the Florida and Pennsylvania Acts were found unconstitutional based on elements of those statutes which are different from Indiana's Act. We agree. The Florida Act provided that if a decision was not rendered within ten months, the Medical Mediation Panel would lose jurisdiction over the Florida malpractice case and the case would revert to the law courts. In *Aldana v. Holub*, (1980) Fla., 381 So.2d 231, *reh. denied*, the State of Florida contended that the ten month jurisdictional period could be extended under the Act while the petitioners, who happened to be physicians, countered by arguing that the

period could not be extended and that the Act therefore was unconstitutional. The Florida Supreme Court found the Florida Act unconstitutional because its operation had proven the Act arbitrary and capricious. The Florida Supreme Court specifically found that the absolute ten month jurisdictional period dictated by the Florida Act deprived the petitioners of due process. *Aldana, supra.* In the matter of the Pennsylvania Health Care Services Malpractice Act, the Pennsylvania Supreme Court found:

"The stated purpose of the Act expressly provides as an objective that one who sustains injury or death as a result of the fault of a health car[e] (sic) provider *'can obtain a prompt determination of his claim and the determination of fair and reasonable compensation.'"*

*Mattos v. Thompson,* (1980) 491 Pa. 385, 392, 421 A.2d 190, 193 [apparently quoting from Pa.Stat.Ann. tit. 40, § 1301.102 (Purdon Supp.1984)]. The Pennsylvania Court in *Mattos* concluded that the history of the implemented Act in Pennsylvania did not show that the legislature was correct in its judgment that the Act would expedite the disposition of malpractice claims. The Pennsylvania Court specifically found that the compelling state interest and stated purpose of the Pennsylvania Act had not been effectuated since the desired objective of expediting the disposition of malpractice claims in Pennsylvania was not realized. The state interest in Pennsylvania, of course, was different than that in Indiana since the Indiana Legislature stated that the compelling state interest behind Indiana's Malpractice Act was to insure the continuation of medical services in the State of Indiana.

■ In *Johnson,* this Court found that the legislative concern in passing the Indiana Malpractice Act was the recognition of an emergency which threatened the availability of the professional services of physicians and other health care providers to the people of Indiana. The Legislature responded with this Act in an effort to preserve medical services and to protect the well being of Indiana citizens. We found that the Act reflected a specific legislative adjudgment that a causal relationship existed between the prosecution of malpractice claims against health care providers and the threatened and actual diminution of health care services. Moreover, we found that the legislative measure was a rational means of obtaining the stated compelling state interest. In so finding, this Court recognized the potential for delays to claimants but found an acceptable trade-off in the benefits to be derived therefor. Justice DeBruler, writing for the unanimous Court, stated:

"The restriction upon the access to courts for patients under the Act is severe, yet based upon the above appraisal for constitutional purposes, it is not so restrictive as to violate the right to access to courts guaranteed by Art. I, § 12, of our Constitution."

*Johnson,* 273 Ind. at 390, 404 N.E.2d at 596. In other words, the mere fact that there is a delay which may be as long as 23.4 months from the time of filing until the time the panel opinion is rendered, is not enough to hold Indiana's Malpractice Act unconstitutional. This Court acknowledged in *Johnson* that in dealing with the constitutionality of a state statute, we do not judge the wisdom or the rightness of its underlying policies. Since this Act is related to the public health and welfare, we reaffirm the following from *Johnson:*

"[It] 'need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.'"

*Johnson,* 273 Ind. at 387, 404 N.E.2d at 594 [*quoting Williamson v. Lee Optical of Oklahoma,* (1955) 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563].

■ Plaintiffs presented no evidence that there is no longer a medical emergency in this State. The Legislature originally found such a medical emergency and determined that the Act was a reasonable means

of dealing with that emergency. In order to successfully attack the Act on constitutional grounds, Plaintiffs were required to prove that the Act was not a reasonable means to achieve the continuation of medical services in Indiana. In *Johnson,* this Court found that the delays caused by the Act might be severe. The evidence introduced at this trial showed only the extent of these delays and did not show that there is no longer a medical emergency in this State. Therefore, the evidence introduced at trial does not alter the conclusions of this Court reached in *Johnson.* This Court indicated in *Johnson* that consideration must be given to the rational basis for the classification contained in the Act. Specifically, we stated:

"The question for our determination is whether there is some 'ground of difference' that makes clear the reason for the different and more burdensome treatment accorded medical malpractice tort claimants and explains the corresponding special consideration given the health care providers. We conclude that a ground does exist and was not negatived by appellants in the courts below."

*Johnson,* 273 Ind. at 392, 404 N.E.2d at 597. No evidence was introduced by Plaintiffs in this cause to show that the severity of the delay to malpractice claimants was unreasonable in light of the compelling state interest. There also was no showing by Plaintiffs nor any findings made by the trial court that the delays caused by the Malpractice Act are any greater than those delays occasioned by cases not required to proceed under the Act.

Defendants claim that the trial court erred by failing to await the eventual decision by the Court of Appeals in *Cha v. Warnick* which involved these same Plaintiffs and Defendant Cha for the same injuries. We notice that Defendants Miller and the Department of Insurance moved to dismiss the instant case pursuant to Ind.Code § 34-4-10-6 (Burns 1973) but their motions were overruled. Ind.Code § 34-4-10-6 provides:

"The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceedings."

In the cause before the Court of Appeals, Plaintiffs challenged the constitutionality of the Malpractice Act just as they have done in the instant cause for declaratory judgment. Defendants now maintain that it was improper to challenge the Act's constitutionality in this declaratory action when the same issue was pending on appeal in another court of concurrent jurisdiction. Moreover, Defendants contend that the judgment of the Court of Appeals in the former cause was the "Law of the case."

There is merit to Defendants' contention that any declaratory judgment which might be entered in this cause cannot resolve all of the controversy between these parties. These are the same plaintiffs who instituted the prior malpractice action against Defendant Cha in the Lake Circuit Court which has now been remanded by the Court of Appeals to that trial court for further proceedings. No matter what disposition is made of this case, Plaintiff's claim for damages against Dr. Cha will still be before the Lake Circuit Court for determination. That suit and *not* the instant one will determine whether Plaintiffs are entitled to any judgment against Defendant Cha and it is in that suit that any judgment rendered will be obtained or enforced. Plaintiffs therefore seek to determine the constitutionality of the Medical Malpractice Act in this cause but will litigate their substantive claim in another cause. The Court of Appeals has found that declaratory judgment is not appropriate in a case challenging the qualifications of an office holder since even a decision that the incumbent was not properly holding office could neither determine the proper person to hold the office nor provide for the enforcement of the judgment. After all, another independent action would be required before final relief could be obtained. *Madden v. Houck,* (1980) Ind.App., 403 N.E.2d 1133, *trans. denied.* This

Court has held that declaratory judgment actions are appropriate when the "ripening seeds" of a controversy are present even though they have not yet developed into a right of action for executory relief. We also held, however, that when a cause of action for affirmative executory relief has matured, the courts will not try the questions involved piecemeal but will determine the rights of the parties only in connection with an action seeking relief to which the complaining party would be entitled if his contentions are sustained. *Pitzer v. City of East Chicago,* (1943) 222 Ind. 93, 51 N.E.2d 479. In addition to the fact that the constitutional challenges to Indiana's Malpractice Act are raised in both causes, all legal controversy between the parties cannot be determined in this declaratory action since this case can neither adjudicate nor enforce Plaintiffs' damage claims.

■ The "law of the case" doctrine designates that an appellate court's determination of a legal issue is binding on both the trial court and the Court of Appeals in any subsequent appeal given the same case and substantially the same facts. *Fair Share Organization, Inc. v. Mitnick,* (1964) 245 Ind. 324, 198 N.E.2d 765, *cert. denied* 379 U.S. 843, 85 S.Ct. 82, 13 L.Ed.2d 48; *State v. Kuespert,* (1981) Ind.App., 425 N.E.2d 229, *trans. denied* (1982); *Hinds v. McNair,* (1980) Ind.App., 413 N.E.2d 586. The Court of Appeals decision of November 16, 1983, reversed the judgment of the trial court and vacated the default judgment against Defendant Cha. The Court of Appeals further denied Plaintiffs' claim that the Medical Malpractice Act was unconstitutional instead finding that any delay in the commencement of trial proceedings was part of the preparation of any litigation. The Court of Appeals further found that the Malpractice Act contains time periods by which either party could keep the review process moving in order to lessen the delay and that there was no indication in the record that Plaintiffs availed themselves of these provisions. This Court denied transfer in that case. Since Plaintiffs presented these same constitutional questions before this Court at that time, they therefore are bound by the holdings in their first appeal.

We find no compelling reason to change or amend our holding in *Johnson* that the Medical Malpractice Act is constitutional. The trial court's judgment holding that Indiana's Medical Malpractice Act is unconstitutional is reversed and this cause is remanded to the trial court with instructions to enter judgment for Defendants-Appellants.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.

