Timothy W. PLANK, Individually and as Personal Representative of the Estate of Debra L. Plank, Deceased, Appellant–Plaintiff,

v.

COMMUNITY HOSPITALS OF INDIANA, INC., Appellee–Appellee,

and

State of Indiana, Intervenor–Appellee/Defendant.

No. 49A04–1004–CT–254.

Court of Appeals of Indiana.

Oct. 25, 2011.

John Muller, Montross, Miller, Muller, Mendelson & Kennedy, Indianapolis, IN, Robert S. Peck, Ned Miltenberg, Center for Constitutional Litigation, PC, Washington, DC, Attorneys for Appellant.

Robert G. Zeigler, Karen L. Withers, Zeigler Cohen & Koch, Indianapolis, IN, Attorneys for Appellee.

Gregory F. Zoeller, Attorney General of Indiana, Thomas M. Fisher, Solicitor General, Heather Hagan McVeigh, Deputy Attorney General, Ashley Tatman Harwel, Deputy Attorney General, Indianapolis, IN, Attorneys for Intervenor.

Libby Y. Goodknight, Krieg DeVault LLP, Angela M. Smith, Hall, Render, Killian, Heath & Lyman, P.C., Indianapolis, IN, Attorneys for Amici Curiae.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Timothy W. Plank, Individually and as Personal Representative of the Estate of Debra L. Plank ("Debra"), Deceased, (collectively "Plank") filed a complaint against Community Hospitals of Indiana, Inc. ("Community") alleging medical malpractice that resulted in the death of his wife, Debra. A jury found in favor of Plank and awarded him $8.5 million in damages. After Community moved the trial court to reduce the verdict to conform with the statutory cap of $1.25 million under the Indiana Medical Malpractice Act ("the Act"), Plank filed an objection and requested an evidentiary hearing on the issue of whether the statutory cap under the Act is unconstitutional. The trial court denied Plank's request for an evidentiary hearing and entered judgment. Plank

now appeals. On cross-appeal, Community contends that the trial court erred when it instructed the jury on the hospital's liability for the negligence of independent contractors. We hold that Plank is entitled to an evidentiary hearing and that there was no error in the jury instruction.

We affirm in part, reverse in part, and remand for further proceedings.[1]

## FACTS AND PROCEDURAL HISTORY

On November 7, 2001, Debra began experiencing severe abdominal pain and sought medical treatment at Community Hospital. Debra sought treatment there on two more occasions between November 7 and November 14, but doctors failed to diagnose a small bowel obstruction. As a result of the missed diagnosis, Debra contracted sepsis and died.

Plank filed a proposed complaint with the Department of Insurance against Community and three physicians. Prior to trial, the three physicians were dismissed, leaving Community as the sole defendant. On September 3, 2009, a jury found in favor of Plank and awarded him $8.5 million in damages.

Shortly after the verdict was delivered, Community orally moved to reduce the award to the amount of the statutory cap, $1.25 million, pursuant to the Act. Plank did not object in open court, but eight days later, on September 11, and before the trial court had entered judgment, Plank filed a written Objection to Reduction of Jury's Verdict. Plank alleged that Indiana Code Section 34–18–14–3 violates the Indiana Constitution and requested an evidentiary hearing to pursue his constitutional challenge.

On October 7, Plank filed both a Notice of Intent to Challenge the Constitutionality of the Cap, reiterating his request for an evidentiary hearing, and a Brief in Opposition to Defendant's Motion to Apply the Cap. On October 23, the trial court found that Plank had waived his objection to the reduction of the verdict and entered judgment in favor of Plank in the amount of $1.25 million. On November 17, Plank filed a motion to correct error, which the trial court granted in part. The court vacated its October 23 judgment and found that Plank had not waived his constitutional challenge, but the court did not rule on Plank's request for an evidentiary hearing. The trial court instead "directed the parties to cite the Court to any legal authority calling into question the continuing viability of the Indiana Supreme Court's holding in *Johnson v. St. Vincent Hospital*, 273 Ind. 374, 404 N.E.2d 585 (1980), that the [statutory caps on medical malpractice awards] were constitutional."[2] Appellant's App. at 13.

The trial court granted the State of Indiana leave to intervene for the purpose of defending the constitutionality of Indiana Code Section 34–18–14–3, and the parties and the State filed memoranda supporting their respective positions on the issue. On March 31, 2010, the trial court denied Plank's request for an evidentiary hearing, reinstated its previous order overruling Plank's objection to the reduction of the jury verdict, and entered judgment in favor of Plank in the amount of $1.25 million. This appeal ensued.

## DISCUSSION AND DECISION

### APPEAL

■ Plank presents a single dispositive issue for our review, namely, whether the

---

1. We heard oral argument in this matter on September 14, 2011.

2. *Johnson* was abrogated in part by *Collins v. Day*, 644 N.E.2d 72 (Ind.1994), and overruled in part by *In re Stephens*, 867 N.E.2d 148 (Ind.2007).

trial court erred when it denied his request for an evidentiary hearing on the constitutionality of the statutory cap on medical malpractice awards under Indiana Code Section 34–18–14–3.[3] That statute provides in relevant part:

(a) The total amount recoverable for an injury or death of a patient may not exceed ...:

\* \* \*

(3) One million two hundred fifty thousand dollars ($1,250,000) for an act of malpractice that occurs after June 30, 1999.

*Id.*

In *Johnson,* our Supreme Court addressed, among other issues, a constitutional challenge to the cap on medical malpractice awards under the Act, and the Court's holding in *Johnson* is at the core of this appeal. In particular, the appellants in *Johnson* alleged in relevant part that the statutory cap on their awards violated "the due process and equal protection clauses of the Fourteenth Amendment and the Indiana Constitution, the rights and privileges clause of Art. I, § 23, of the Indiana Constitution, [and] the right to trial by jury guaranteed by Art. I, § 20, of the Indiana Constitution." 404 N.E.2d at 589. The appellants and amici curiae argued that the Act, including the statutory caps on awards, was constitutional in light of the evidence of "an emergency which threatened the availability of the professional services of physicians and other health care providers to the people of Indiana." *See Cha v. Warnick,* 476 N.E.2d 109, 112 (Ind.1985), *cert. denied,* 474 U.S. 920, 106 S.Ct. 249, 88 L.Ed.2d 257 (1985).

As our Supreme Court explained in *Johnson,*

*a great deal of proof descriptive of the conditions in the health care and insurance industries which gave rise to the Act was brought forth and developed at a trial for constitutional purposes.* Immediately prior to its enactment seven of the ten insurance companies writing the majority of medical malpractice insurance policies in the State ceased or limited writing such insurance because of unprofitability or an inability to calculate an adequate premium. Premiums had already increased as much as 1200 percent over a period of fifteen years because of the increase in the number and size of claims. Physicians practicing high risk specialties such as anesthesiology were hard pressed or totally unable to purchase insurance coverage. In some rural areas surgery was reported cancelled. Emergency services were discontinued at some hospitals. Health care providers had become fearful of the exposure to malpractice claims and at

---

**3.** In addition to the issue of whether an evidentiary hearing should be held, Plank raises other issues that go to the substance of his argument that the Act is unconstitutional on grounds other than those addressed in *Johnson.* In particular, Plank asserts that the Act "usurps judicial authority and violates [the] separation of powers" and constitutes an uncompensated taking of his property in violation of Article I, Section 21 of the Indiana Constitution. Amended Brief of Appellant at 13. The trial court's order indicates that it did not consider any of those arguments, but concluded that *Johnson* precluded any constitutional challenge to the Act. On remand, we direct the trial court to consider and rule on any and all of Plank's constitutional challenges to the Act, whether facial or as applied. Until the trial court rules, we neither address nor express any opinion on the merits of those issues.

We likewise express no opinion whether, as Plank contends, an analysis under the two-prong test in *Collins v. Day,* 644 N.E.2d 72 (Ind.1994), will lead to a different outcome than that in *Johnson.* Plank's arguments on this point are similar to those asserted by the plaintiff in *Martin v. Richey,* 711 N.E.2d 1273 (Ind.1999).

the same time were unable to obtain adequate malpractice insurance coverage at reasonable prices.

According to the Legislature's appraisal, these conditions implicated the vital interests of the community in the availability of the professional services of physicians and other health care providers. The Legislature responded with this Act in an effort to preserve those services and thereby to protect the public health and wellbeing of the community. It reflects a specific legislative judgment that a causal relationship existed at the time between the settlement and prosecution of malpractice claims against health care providers and the actual and threatened diminution of health care services. The exceptionally high cost and even unavailability of malpractice insurance were major links in the relational chain. They in turn were connected through the large settlements and judgments being paid to patients. To the extent that these sums were excessive or unjustifiable, they had become so large because the processes by which evidence of negligent conduct was being gathered, evaluated, and used were faulty. Subsidiarily, these sums were being unnecessarily increased because the habitually negligent health care providers were not being identified and dealt with, very large attorney fees were being charged, and the time limitations upon bringing malpractice actions were too long.

With these judgments as its basis the Act created voluntary state-sponsored liability insurance for doctors and other health care providers, created a patient compensation fund, took measures to prevent injuries to patients through the negligence of health care providers, and subjected negligence claims against health care providers to special controls limiting patient remedies.

404 N.E.2d at 589–90 (emphasis added).

Here, in denying Plank's request for an evidentiary hearing, the trial court noted that the evidence presented to the trial court in *Johnson* regarding the "general economic conditions of the health and insurance industries ... was heavily relied on by the [Supreme] Court in reaching its conclusion that the caps bore a rational relation to the public purposes of the Act." Appellant's App. at 45. The trial court stated further that

[Plank] does not contest the correctness of the original determination that statutory caps bore a rational relation to a legitimate public objective. Instead, Plank contends that as a result of subsequent economic and social changes the caps no longer promote their original purposes. Thus, in Plank's view a statute, which was once deemed constitutional, has become unconstitutional.

*The notion that Courts have the authority to periodically review a statute to determine whether it continues to have a rational relation to its original purposes does violence to the constitutional requirement of separation of powers.* Once the Supreme Court made the determination that at the time of enactment the imposition of a cap on recoveries had a rational relation to a legitimate public objective, it and all other Indiana Courts were obliged to defer to the General Assembly's policy decision. "A statute is not unconstitutional simply because the court might consider it born of unwise, undesirable or ineffectual policies." [*Johnson,* 404 N.E.2d at] 591.

In any event, this Court is obliged to follow the law as set forth in *Johnson,*

unless [Plank] can cite it to more recent legal authority to the contrary.

*Id.* at 46 (emphasis added).

Here, the trial court concluded that it did not have authority to revisit the constitutionality of the statutory cap in light of *Johnson.* But the Indiana Supreme Court has acknowledged that a change in circumstances may justify reconsideration of a prior determination of constitutionality under Article I, Section 23 of the Indiana Constitution. *See Collins v. Day,* 644 N.E.2d 72, 81 (Ind.1994); *see also Martin v. Richey,* 711 N.E.2d 1273, 1281 (Ind. 1999). And that Court has repeatedly held that a party asserting a constitutional challenge has the burden to prove the grounds for that challenge. As here, the presentation of evidence might well be required to sustain that burden.

For example, in *Johnson,* our Supreme Court stated in relevant part:

In considering these constitutional challenges, we accord this Act with every reasonable presumption supporting its validity and *place the burden upon the party challenging it to show unconstitutionality.*

\*     \*     \*

The statute is therefore presumed constitutional, and the *burden was on appellants below to negative every conceivable basis which might have supported the classification.*

\*     \*     \*

*The burden was upon those appellants* below who have relied upon this argument to prove that there was no correlation between the limitation upon recovery and the promotion of health care.

404 N.E.2d at 590, 600 (emphases added).

In *Cha,* where our Supreme Court reversed a trial court's conclusion that the Act was unconstitutional, the Court emphasized the plaintiffs' failure to present sufficient evidence to prevail on their constitutional challenge:

Plaintiffs presented no evidence that there is no longer a medical emergency in this State. The Legislature originally found such a medical emergency and determined that the Act was a reasonable means of dealing with that emergency. *In order to successfully attack the Act on constitutional grounds, Plaintiffs were required to prove that the Act was not a reasonable means to achieve the continuation of medical services in Indiana.* In *Johnson,* this Court found that the delays caused by the Act might be severe. The evidence introduced at this trial showed only the extent of these delays and did not show that there is no longer a medical emergency in this State. Therefore, the evidence introduced at trial does not alter the conclusions of this Court reached in *Johnson.*

476 N.E.2d at 112–13 (emphasis added).

And, perhaps most notably, in *Collins* our Supreme Court stated that it could "not deny that preferential legislative treatment for a classification which was proper when enacted may later cease to satisfy the requirements of Section 23 because of intervening changes in social or economic conditions." 644 N.E.2d at 81. In *Collins,* the Court rejected the constitutional challenge because it found that "the plaintiff failed to carry the burden placed upon the challenger to negative every reasonable basis for the classification[.]" *Id.*

In sum, our Supreme Court has declared both that a determination of constitutionality under Section 23 can be revisited and that the challenging party has the burden to prove that changes in circumstances require reversal of existing case law. Under *Collins, Martin,* and *Cha,* our

Supreme Court has directed us to our conclusion that Plank is entitled to an evidentiary hearing. *See also Ledbetter v. Hunter*, 842 N.E.2d 810, 814 (Ind.2006) (finding dispositive "the plaintiff's failure to negate the legislative basis for unequal treatment of the two identified classes;" plaintiff improperly relied on an alleged *lack* of evidence to the contrary.)

■ Community also maintains that Plank waived his constitutional challenge when he did not make a contemporaneous objection to Community's oral motion to reduce the verdict. After Plank's motion to correct error, the trial court concluded that Plank did not waive his constitutional challenge by asserting it for the first time after the jury verdict, but before the entry of final judgment. We agree with Plank that his first opportunity to raise the issue was after the verdict, because until that time there was no way to know whether the damages would exceed the cap.[4] And because Plank raised the issue before the trial court entered final judgment, there is no waiver.

■ We likewise reject the State's categorical assertion that "[i]f circumstances have changed such that the justifications for the damages cap no longer exist, it is up to the legislature, not the courts, to amend or repeal the statute." Appellee's App. at 110. With reference to *Collins, Martin*, and *Cha*, the State avers that "[t]hose cases, more than anything, are about legislative deference." *Id.* But the State misses an important point. While we must, of course, give substantial deference to the legislature, our courts are also responsible for determining the constitutionality of laws. In *Morrison v. Sadler*, 821 N.E.2d 15, 21–22 (Ind.Ct.App.2005), we explained the judiciary's role in examining these issues:

Enactments challenged under the Indiana Constitution are presumed to be constitutional until clearly overcome by a contrary showing, and any doubts are resolved against the party bringing the challenge. [*Dvorak v. City of Bloomington*, 796 N.E.2d 236, 237–38 (Ind. 2003).] ... *Collins* requires only that the disparate *treatment* accorded by legislation, not the *purposes* of the legislation, be reasonably related to the inherent characteristics that distinguish the unequally treated classes, although legislative purposes may be a factor considered in making the reasonable relationship determination. *Dvorak*, 796 N.E.2d at 239. However, our supreme court has also stated that it will not "inquire into the legislative motives prompting such classification." *Collins*, 644 N.E.2d at 80 (quoting *Chaffin v. Nicosia*, 261 Ind. 698, 701, 310 N.E.2d 867, 869 (1974)). Rather, "*[l]egislative classification becomes a judicial question only where the lines drawn appear arbitrary or manifestly unreasonable. So long as the classification is based upon substantial distinctions with reference to the subject matter, we will not substitute our judgment for that of the legislature....*" *Id.*

(Some emphasis added).

Here, again, we address a narrow issue, namely, whether Plank is entitled to an

4. We reject Community's contention that Plank should have moved for declaratory judgment before trial on the issue of whether the statutory cap is unconstitutional. While Community has directed us to authority in support of that procedure, Community does not direct us to any authority stating that a declaratory judgment action is required.

Moreover, we observe that a declaratory action prior to trial under similar circumstances would be inconsistent with the principles of judicial economy. Here, for instance, had the jury awarded damages in an amount lower than the statutory cap, the declaratory judgment proceedings would have been for naught.

evidentiary hearing to present his constitutional challenge to the statutory cap on medical malpractice awards. We hold that Plank is entitled to that hearing, but we neither reconsider nor address the Act's constitutionality. That question is reserved in the first instance for the trial court, following a hearing to be held on remand.

## CROSS–APPEAL

■ Community cross-appeals and contends that the trial court abused its discretion when it instructed the jury on its liability for the conduct of an independent contractor. In particular, Community challenges the following jury instruction:

Community Hospital is responsible for the negligent acts of doctors, including radiologists, who exclusively provide healthcare services in the hospital, even if these doctors are not employees of Community, unless Community provides to the patient meaningful written notice that the doctor is an independent contractor, for whom Community is not legally responsible. Whether a written notice is "meaningful" is to be determined by you by taking into account all the circumstances surrounding this notice.

Appellee's App. at 138.

■ The manner of instructing a jury is left to the sound discretion of the trial court. *Callaway v. Callaway*, 932 N.E.2d 215, 222 (Ind.Ct.App.2010). Its ruling will not be reversed unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. *Id.* Jury instructions must be considered as a whole and in reference to each other. *Id.* at 222–23. In reviewing a trial court's decision to give or refuse a tendered instruction, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in

the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Id.* at 223. Before a defendant is entitled to a reversal, he must affirmatively show the instructional error prejudiced his substantial rights. *Id.*

On appeal, Community asserts that the instruction

effectively told the jury that it was up to them, as a jury issue, to determine whether Community Hospital had provided "meaningful" written notice to the decedent Debra Plank under *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142 (Ind.1999) to the effect that Dr. Kurlander, a radiologist, was an independent contractor and not an employee of Community Hospital.

Amended Brief of Appellee at 40. And Community maintains that

[t]here is no way to evaluate how the jury interpreted the phrase, "meaningful" written notice nor is there a way to determine how they determined if the notice was subjectively meaningful to the decedent. This *misstatement of the law regarding apparent agency* misled and confused the jury thereby causing prejudice to Community Hospital by the jury's finding of negligence against the Hospital.

*Id.* (emphasis added).

In support of its contention, Community relies on *Sword v. NKC Hospitals*, 714 N.E.2d 142, 152 (Ind.1999), where the Indiana Supreme Court adopted the Restatement (Second) of Torts § 429, which the Court read and construed as follows:

[A] trier of fact must focus on the reasonableness of the patient's belief that the hospital or its employees were rendering health care. *This ultimate determination is made by considering the*

*totality of the circumstances, including the actions or inactions of the hospital, as well as any special knowledge the patient may have about the hospital's arrangements with its physicians.* We conclude that a hospital will be deemed to have held itself out as the provider of care unless it gives notice to the patient that it is not the provider of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital. A hospital generally will be able to avoid liability by providing meaningful written notice to the patient, acknowledged at the time of admission. *See Cantrell v. Northeast Georgia Med. Ctr.*, 235 Ga.App. 365, 508 S.E.2d 716, 719–20 (1998) (concluding that hospital did not hold physician out as its employee as evidenced by conspicuous signs posted in hospital's registration area and express language in the patient consent to treatment form); *Valdez v. Pasadena Healthcare Management Inc.*, 975 S.W.2d 43, 48 (Tex.App. 1998) (finding written notice, signed by the patient, that physician served as an independent contractor was sufficient to release hospital from liability for physician's medical malpractice). Under some circumstances, such as in the case of a medical emergency, however, written notice may not suffice if the patient had an inadequate opportunity to make an informed choice.

As to the meaning and importance of reliance in this specific context, *we agree with the cases that hold that if the hospital has failed to give meaningful notice, if the patient has no special knowledge regarding the arrangement the hospital has made with its physicians, and if there is no reason that the patient should have known of these em-*

*ployment relationships, then reliance is presumed.*

(Emphases added, some citations omitted).

Community contends that it provided meaningful notice to Plank, as a matter of law, as evidenced by the "express written language in the Patient Consent Form that was signed and acknowledged by Debra Plank on November 9, 2001." Amended Brief of Appellee at 41. That Consent Form read in relevant part as follows:

4. LEGAL RELATIONSHIP BETWEEN HOSPITAL AND PHYSICIAN *Many physicians* and surgeons furnishing services to the patient, including the radiologist, pathologist, anesthesiologist, emergency room physician and the like *are independent contractors* with the patient and are not employees or agents of the hospital. When a patient is under the care and supervision of a physician who is an independent contractor, it is the responsibility of the hospital and its nursing staff to carry out the instructions of such physicians. The hospital is not responsible for the medical decisions or actions of such physicians. Your hospital bill will not include charges for the services of these independent physicians. These independent physicians will send you a separate bill.

Appellee's App. at 125 (emphases added). And Community maintains that "there was absolutely no evidence presented that Debra Plank was not provided meaningful written notice regarding the relationship between Community Hospital and the independent contractor radiologist[.]" Amended Brief of Appellee at 42.

Plank contends, however, that the instruction as given was a correct statement of the law and was supported by the evidence. Plank maintains that the consent form was ambiguous and that it was for the jury to determine "whether the notice

actually informed [Debra that *her* ] radiologist was an independent contractor[.]" Amended Reply Brief at 35. And Plank points out that the "trial court correctly determined that the adequacy of the notice was in issue in the trial, required a factual determination, and the jury needed to be instructed on the issue." *Id.* at 35. We agree with Plank.

Community contends, in effect, that the word "many" actually means "all," as if the notice stated that all of the providers listed in the notice are independent contractors. But the statement in the consent form that "many physicians" providing services "are independent contractors" is ambiguous. Plank had no way to know which of the physicians who provided services to her were independent contractors and, specifically, whether the radiologist who provided services to her was one of the "many." And Community does not direct us to any evidence that the Planks were otherwise provided "meaningful written notice" that the radiologist in this case was an independent contractor, which, they acknowledge, is required under *Sword*. The ultimate question is the reasonableness of the patient's belief. *Sword*, 714 N.E.2d at 152. Because Community has not demonstrated that the notice was unambiguous and subject to only one reasonable interpretation, and it has not shown that the instruction misstated the law or otherwise misled the jury, we hold that the trial court did not abuse its discretion when it gave the instruction. *See Callaway*, 932 N.E.2d at 222.

## CONCLUSION

We hold that Plank is entitled to an evidentiary hearing so that he can attempt to sustain his burden to prove that the statutory cap on medical malpractice awards under the Act is unconstitutional. Without a hearing, Plank has no means to satisfy his burden of proof. We need not address the merits of Plank's constitutional challenge, which are not before us in this appeal. Finally, Community has not demonstrated that the trial court abused its discretion when it instructed the jury and, thus, Community is not entitled to a new trial.

Affirmed in part, reversed in part, and remanded for further proceedings.

RILEY, J, concurs.

BAKER, J., concurs and dissents with separate opinion.

BAKER, Judge, concurring and dissenting.

I agree with the majority's conclusion that the trial court did not err in giving the instruction regarding Community Hospital's (Community) liability for the negligence of independent contractors. And I agree with the rationale that a plaintiff is generally entitled to an evidentiary hearing regarding a constitutional challenge to the statutory cap on medical malpractice awards. Indeed, a change in circumstances may well justify reconsideration of a prior determination of constitutionality under Article I, Section 23 of the Indiana Constitution. *Collins v. Day*, 644 N.E.2d 72, 81 (Ind.1994).

In this case, Plank might be required to present evidence to sustain his burden of showing that changes in circumstances would warrant the reversal of existing case law; however, I am compelled to agree with the trial court's initial determination that Plank waived his constitutional arguments as to the reduction of the verdict in this instance. The record reflects that since the inception of the malpractice claim in 2003, Plank has known that the statutory cap would be applied if he received a jury verdict that exceeded $1,250,000. Community's motion to reduce the jury

verdict was squarely and clearly presented in open court after the verdict was read. And this is not a case where Community's request for the reduction in damages was hidden or entangled with other issues in the case.

Plank did not present any evidence, make argument, or otherwise make an effort to challenge the statutory cap during the two-week trial. Moreover, when Community moved to reduce the jury's verdict, Plank did not object. In fact, Plank consented to the trial court's directive to prepare a corresponding entry of judgment with regard to the reduced verdict. Appellant's App. p. 10.

In my view, Plank could and should have moved for a declaratory judgment, or otherwise placed Community and the trial court on notice that he intended to challenge the constitutionality of the statutory cap on damages at some point prior to or during the trial. *See Combs v. Tolle,* 816 N.E.2d 432, 435 n. 3 (Ind.Ct.App.2004) (holding that challenges to the constitutionality of a civil statute may be waived if they could have been raised to the trial court but were not). Community would have been afforded the opportunity to challenge the amount of damages at trial and, depending on the resolution of the issue before the trial commenced, future litigation regarding various aspects of the damages might very well have been avoided.

In sum, because Plank could have challenged the constitutionality of the statutory damages cap either before or during trial, but he did not, I believe that he has waived his constitutional arguments. As a result, Plank should not be permitted to advance those arguments at a subsequent hearing.