# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 27 2017, 9:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

C. Brent Martin
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

George A. Reese, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 27, 2017

Court of Appeals Case No.
31A01-1609-PC-2164

Appeal from the Harrison Superior Court

The Honorable Frank Newkirk, Jr., Special Judge

Trial Court Cause No.
31D01-1310-PC-10

**Bradford, Judge.**

# Case Summary

[1] In March of 2010, Appellee-Respondent the State of Indiana ("the State") charged Appellant-Petitioner George A. Reese, Jr. with Class A felony child molesting. Reese was found guilty following a jury trial. Reese was also found to be a habitual offender. He was subsequently sentenced to a term of seventy years: forty years for the Class A felony enhanced by thirty years for the habitual offender finding. On May 23, 2013, we affirmed Reese's conviction.[1]

[2] Reese subsequently filed a petition seeking post-conviction relief ("PCR"), arguing that he suffered ineffective assistance of trial counsel. Following a hearing on Reese's petition, the post-conviction court determined that Reese had failed to establish that he suffered ineffective assistance of trial counsel. Reese challenges this determination on appeal. Concluding that Reese has failed to prove that he suffered ineffective assistance of trial counsel, we affirm.

# Facts and Procedural History

[3] Our memorandum decision in Reese's prior direct appeal, which was handed down on May 23, 2013, instructs us to the underlying facts and procedural history leading to this post-conviction appeal:

> K.J., born in March 1996, lived with her family in New Albany, Floyd County. In May 2008, the family met Reese at a cookout.

---

[1] Reese did not challenge his sentence on appeal.

Reese moved in with them in New Albany, and when they moved in June 2008 to a four-bedroom one-bathroom house in Palmyra, Harrison County, Reese moved with them. The household in Palmyra consisted of five children and seven adults: K.J., her older brother R.J., her older sister L.J., her younger brother M.J., her younger sister S.J., her father Robert, her stepmother Christina, her stepmother's cousin Tommy, Tommy's wife Angela, Tommy's brother Michael Priddy, Michael Devore, and Reese. While in Palmyra, Reese asked Robert and Christina if they knew "where he could get some young pussy." Tr. p. 1087. Robert and Christina said no.

Reese, who was fifty-two years old, flirted with twelve-year-old K.J., bought her ice cream and other items, and treated her differently from the other children. He also hugged her, which made her uncomfortable.

Robert was cooking out in the backyard one day when he sent K.J. into the kitchen for some ketchup. Upon walking into the kitchen, she saw Reese there. Reese asked K.J. to give him a blow job and pulled down his pants. Scared, K.J. knelt down and put her mouth on his penis. When S.J. appeared at the back door and saw them, K.J. stopped and went to her room, mad and humiliated that her little sister had to see her like that.

About a month after the family moved to Palmyra, S.J. told Christina what she had seen. When Robert learned about it, he confronted Reese, who admitted what he had done with K.J. Robert kicked Reese out of the house.

Robert invited Reese back to Palmyra sometime after the wind storm in September 2008 because he wanted to find out his last name. At some point, K.J. told L.J. about what Reese made her do. L.J. eventually stuck a knife to Reese's throat and ordered him out of the house. When Robert and Christina asked where Reese was, L.J. said she put a knife to his throat and kicked him out because he had been making K.J. do things to him. Robert

called Reese and threatened him.

When Reese lived with the family, he gave them money for groceries and also bought them an above-ground pool. Several months after L.J. kicked him out at knifepoint, Reese called Robert and offered to buy the family some furniture. Robert said they did not need anything from him. Reese then asked to talk with K.J. Robert allowed it but monitored the call from another phone in the house. Reese asked K.J. "how his dick tasted in her mouth." *Id.* at 1085. Robert angrily interjected that he would rip Reese's heart out and feed it to him. Reese hung up.

Indiana State Police Detective William Wibbels began investigating the case in November 2009. During his investigation, he spoke with K.J., who had since been removed from the home and was staying at a youth shelter. K.J. told Detective Wibbels that Reese made her perform oral sex on him about two hundred times.

The State filed numerous charges against Reese but dismissed all but one count of Class A felony child molesting and one count of being a habitual offender. Before trial, Reese filed a motion in limine seeking to prohibit the State from presenting evidence of his alleged uncharged misconduct, which the court granted. Reese was tried in February 2012, but the jury deadlocked and the court declared a mistrial. Before the second trial, Reese took a polygraph examination, which he had been demanding to take since he was first charged. The examiner asked Reese in three different ways whether he had engaged in oral sex with K.J. Each time, Reese responded no and the examiner determined he was being untruthful.

K.J. and others testified for the State on retrial. K.J. testified that Reese asked her for a blow job and pulled down his pants, and she complied. On cross, Reese verified with K.J. that she had initially told Detective Wibbels that she was forced to perform oral sex on Reese about two hundred times but was now telling

the jury that it happened only once. The following exchange then occurred:

> Q: Why would you lie to Officer Wibbels and tell him it happened two hundred times and then today say it only happened once?
>
> A: We were talking about several different me [sic] so …
>
> Q: Okay. So if you're talking about several different people that means it's okay to lie about what George did to you?
>
> A: It wasn't practically lying.
>
> Q: Pardon me?
>
> A: It wasn't lying. It was mis-confusion.

*Id.* at 833. Reese then pointed out several inconsistencies between K.J.'s deposition testimony and trial testimony. On redirect, K.J. acknowledged the inconsistencies but testified that she had never wavered about the fact that Reese put his penis in her mouth when she was twelve years old. She further said that she had been abused by a lot of men and that it was difficult to keep everything straight. On recross, K.J. testified that five men, including Reese, had sexually abused her. On redirect, the State asked K.J. whether there were certain things she could not discuss at trial, and K.J. responded affirmatively. She said that those rules made it more difficult to answer questions.

Reese and others testified for the defense. Reese denied that any oral sex with K.J. occurred. He stated that the last time he stayed with K.J.'s family was for a few days in October 2008. One morning during that time, he thought he heard Robert asking K.J.'s sister L.J. in the kitchen, "[D]o you want me to lick your pussy[?]" *Id.* at 1649. Reese testified that he confronted

Robert about it by phone in February or March 2009, and Robert hung up on him. Reese claimed that no one thought he had done anything wrong until he accused Robert of wrongdoing.

The jury found Reese guilty of Class A felony child molesting and subsequently found him guilty of being a habitual offender. The trial court sentenced him to seventy years: forty years for the Class A felony enhanced by thirty years for the habitual offender finding.

*Reese v. State*, 31A05-1206-CR-309, *1-3 (Ind. Ct. App. May 23, 2013) (footnotes omitted). Reese appealed, challenging only his conviction for Class A felony child molesting. We affirmed Reese's conviction on appeal.

[4] On October 21, 2013, Reese filed a *pro-se* PCR petition. Reese, by counsel, filed an amended PCR petition on March 8, 2016. In this amended petition, Reese claimed that he received ineffective assistance from his trial counsel. On August 29, 2016, the post-conviction court issued an order denying Reese's petition. This appeal follows.

# Discussion and Decision

[5] Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id*. A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt*

*v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

[6] Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id.*

## Ineffective Assistance of Counsel

[7] The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S.

668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

[8]     A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id*. We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*.

[9]     Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id*. A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently,

"[a]lthough the two parts of the *Strickland* test are separate inquires, a claim may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

[10] Reese contends that his trial counsel provided ineffective assistance by failing to object to and request a mistrial following an alleged act of prosecutorial misconduct. Specifically, Reese argues that he suffered ineffective assistance of trial counsel because trial counsel failed to object to, or request a mistrial, following certain comments made by the prosecution regarding evidentiary rulings which it claimed limited witnesses' ability to testify completely.

[11] To establish ineffective assistance for trial counsel's failure to object to alleged misconduct by opposing counsel, a petitioner must establish that the trial court would have sustained the objection had one been made and that he was prejudiced by the failure to object. *Jones v. State*, 847 N.E.2d 190, 197-98 (Ind. Ct. App. 2006) (citing *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001)).

> In reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether that misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected. *See Wisehart v. State*, 693 N.E.2d 23, 57 (Ind. 1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1338, 143 L.Ed.2d 502 (1999); *Wright v. State*, 690 N.E.2d 1098, 1110 (Ind. 1997), *reh'g denied*. The "gravity of peril" is measured by the "'probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct.'" *Wisehart*, 693 N.E.2d at 57 (quoting *Kent v. State*, 675 N.E.2d 332, 335 (Ind. 1996) (citing in turn *Bradley v. State*, 649 N.E.2d 100, 107-08 (Ind. 1995), *reh'g denied*.)).

*Coleman v. State*, 750 N.E.2d 370, 374-75 (Ind. 2001).

[12]    On direct appeal, we concluded that the prosecution's statements amounted to misconduct and that this misconduct had "a probable persuasive effect on the jury's decision and thus placed Reese in grave peril." *Reese*, 31A05-1206-CR-309, *10. We therefore concluded that the prosecution committed prosecutorial misconduct. *Id*. However, we further concluded that the prosecutorial misconduct did not amount to fundamental error. *Id*. at *10-11. In reaching this conclusion, we stated the following:

> [I]n this case Reese opened the door to rehabilitative testimony on redirect. It was thus proper for the trial court to allow the State to give the jury some explanation of why L.J. was changing her testimony. Although the State's comments went beyond what was appropriate, we cannot say they amount to fundamental error.
>
> The investigation into K.J.'s home revealed that the children were subjected to extensive sexual abuse by several men. As noted at trial, the prevalence of the abuse made it difficult for K.J. to remember the details of the one isolated incident for which Reese was charged. Reese had the right to cross-examine K.J. and indeed exercised that right by pointing out several inconsistencies in her deposition and trial testimony. For her part, K.J. maintained she was clear at trial about what had occurred and never wavered about the fact that Reese put his penis in her mouth when she was twelve years old. *Although we determine the State committed prosecutorial misconduct, we ultimately conclude that Reese nonetheless received a fair trial*.

*Id*. at *11 (emphasis added).

[13] On appeal, Reese requests that we order the post-conviction court to heed our prior conclusion that the prosecution's misconduct had "a probable persuasive effect on the jury's decision and thus placed Reese in grave peril," *id*. at 10, because our prior conclusion now constitutes the law of the case which is binding on further proceedings in the matter. *See State v. Huffman*, 643 N.E.2d 899, 901 (Ind. 1994) (citing *Cha v. Warnick*, 476 N.E.2d 109, 114 (Ind. 1985)). Reese acknowledges that we also concluded that the prosecution's misconduct did not amount to fundamental error because (1) while some of K.J.'s testimony might have been inconsistent, K.J. never wavered in her testimony relating to sexual abuse at issue, and (2) Reese received a fair trial. Reese argues, however, that our finding relating to fundamental error does not preclude a finding that trial counsel provided ineffective assistance by failing to object to the prosecution's misconduct.

[14] In *Benefield v. State*, 945 N.E.2d 791, 803 (Ind. Ct. App. 2011), we acknowledged that "there is a subtle distinction between the fundamental error and ineffective assistance prejudice standards. In doing so, we stated the following:

> As our supreme court has explained,
>
>> While we frame the standard for ineffective assistance of counsel and fundamental error in somewhat different terms—appropriately so, since the first is a standard of Federal Constitutional law and the second of state criminal procedure—they will invariably operate to produce the same result where

> the procedural posture of the claim is caused by counsel's failure to object at trial.
>
> *McCorker v. State,* 797 N.E.2d 257, 262-63 (Ind. 2003) (footnote omitted). Thus, although the two standards may frequently lead to the same result, the analyses are different. Moreover, consider that "[e]rrors by counsel that are not individually sufficient to prove ineffective representation may add up to ineffective assistance when viewed cumulatively." *Pennycuff v. State,* 745 N.E.2d 804, 816-17 (Ind. 2001). As such, there could be an unpreserved error raised on direct appeal that was found not to have caused fundamental error, but nevertheless when later raised in a post-conviction proceeding as part of an ineffective assistance claim the cumulative effect of that error *when combined with other errors* may amount to ineffective assistance.

*Id.* (emphasis added). Accordingly, we concluded that "fundamental error and prejudice for ineffective assistance of trial counsel present two substantively different questions." *Id.* at 805. We further concluded that "when a claim of ineffective assistance of trial counsel is based on a failure to object, and that error was advanced as fundamental error on direct appeal, a finding that the error did not rise to fundamental error does not automatically rule out the possibility that the error resulted in prejudice sufficient to establish ineffective assistance." *Id.*

[15] In the instant matter, we previously concluded that the prosecution committed misconduct by eliciting testimony and making comments during closing arguments suggesting that "the rules" prevented L.J. and K.J. from testifying truthfully. *Reese*, 31A05-1206-CR-309, *10. In reaching this conclusion, we noted that the jury "*might*" have reasonably inferred that the State had implied

that it had additional evidence of guilt which was not revealed to the jury during trial and that the prosecution's misconduct "had a probable persuasive effect on the jury's decision and thus placed Reese in grave peril." *Id.* (emphasis added). However, given K.J.'s unequivocal testimony relating to the charged incident of sexual misconduct, we "ultimately conclude[d] that Reese nonetheless received a fair trial." *Id.* at 11.

[16] In addition, review of the record reveals that two fellow inmates, George Tuell and Christopher Wood, testified that Reese admitted to them that the charged incident of sexual abuse had occurred. Also, at his request, Reese was given a polygraph test. During this test, the examiner asked Reese in three different ways about whether he had ever placed his penis in K.J.'s mouth. Each time, Reese indicated that he had not done so. The examiner determined that each of these responses was untruthful.

[17] After considering the facts of the underlying case coupled with our prior conclusions through the lens of ineffective assistance prejudice, we conclude that Reese has failed to prove that he was prejudiced, *i.e.*, that there is a reasonable probability that but for the prosecution's misconduct, the result of the proceeding would have been different. *Reed*, 866 N.E.2d at 769. As is outlined in our opinion on direct appeal, the record revealed that K.J.'s apparent confusion which led to some inconsistencies between her deposition and trial testimony stemmed from the fact that she was subjected to extensive sexual abuse by multiple men. We noted that given his line of questioning on cross-examination, Reese opened the door to rehabilitative testimony on

redirect. Importantly, we further noted that with respect to the charged misconduct, K.J.'s testimony was consistent. She did not waver in her testimony that Reese had subjected her to sexual abuse when she was twelve years old by putting his penis in her mouth.

[18] Upon review of both the record and our prior conclusions on direct appeal, we conclude that Reese has failed to prove that he was prejudiced by his trial counsel's allegedly deficient performance. Again, a petitioner's failure to satisfy either prong will cause his ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Given that Reese has failed to prove prejudice, we conclude that Reese has failed to prove that he suffered ineffective assistance of trial counsel.

[19] The judgment of the post-conviction court is affirmed.

Brown, J., concurs.

Vaidik, C.J., concurs in result without opinion.